UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEDGRA D. BAKER,

                          Plaintiff,

    -against-

MTA BUS COMPANY, ROBERT
"BUTCH" MILLER, YONETTE DUKE
AND SUZETTE POME,

                          Defendants.

18-CV-12231 (TMR)

**OPINION & ORDER**

Dated: July 18, 2023

Alejandro Carvajal and Arian Soroush, Cravath, Swaine & Moore LLP, of New York, N.Y., argued for plaintiff Nedgra D. Baker.  Also on the brief was Matthias Thompson.

Gabriella Palencia, MTA Bus Company, of New York, N.Y., argued for defendants MTA Bus Company, Robert "Butch" Miller, Yonette Duke and Suzette Pome.

TIMOTHY M. REIF, Judge, United States Court of International Trade, Sitting by Designation:

        Nedgra D. Baker ("plaintiff") brings the instant action against Robert "Butch"

Miller ("Miller"), Yonette Duke ("Duke"), Suzette Pome ("Pome") (collectively, the

"individual defendants") and MTA Bus Company ("MTA Bus") (collectively,

"defendants"), alleging claims of discrimination based on race, retaliation, failure to

accommodate and a hostile work environment in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000-e et seq.; 42 U.S.C. § 1981; the

Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 et seq.; the

Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.; the New

York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 *et seq.*; and the

New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

*See* Emp. Discrimination Compl. ("Compl."), ECF No. 2.

        Pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"),

defendants move for summary judgment as to each of plaintiff's claims. *See* Not. of

Defs.' Summ. J. Mot. (With R. 56.1 Statement), ECF No. 70; Defs.' Mem. in Supp. of

Their Mot. for Summ. J. Dismissing the Compl. ("Defs. Br."), ECF No. 71; Defs.'

Reply in Supp. of Their Mot. for Summ. J. Dismissing the Compl. ("Defs. Reply

Br."), ECF No. 67.  Plaintiff opposes defendants' motion. *See* Mem. in Opp'n to

Defs.' Mot. for Summ. J. ("Pl. Br."), ECF No. 64.

        For the reasons discussed below, defendants' motion for summary judgment

is GRANTED in part and DENIED in part.

## BACKGROUND

## I.    Parties in the instant action

        Plaintiff, a Black man, began working for MTA Bus as a Bus Operator ("BO")

in 1998.  *See* Defs.' Statement of Facts Pursuant to Local R. 56.1 ("SMF") ¶ 1, ECF

No. 70; Pl.'s Resp. to Defs.' Statement of Undisputed Facts ("RSMF") ¶ 1, ECF

63; Decl. of Matthias Thompson ("Thompson Decl."), Ex. 1 at 15:03-15, ECF No. 65;

Decl. of Gabriella Palencia ("Palencia Decl."), Ex. D, ECF No. 72.  Plaintiff worked

for 14 years as a BO at the JFK Depot, *see* SMF ¶ 1; RSMF ¶ 1, which plaintiff

describes as one of eight bus depots that MTA Bus operates in Queens, New York.

*See* Pl. Br. at 3 n.3; Thompson Decl., Ex. 3 at 15:19-16:18; Pl.'s Statement of Add'l Material Facts ("SAMF") ¶ 1, ECF No. 63.

Defendants Miller, Duke and Pome "held managerial roles at the JFK Depot during [plaintiff's] employment." SAMF ¶ 3. Miller served as the Assistant General Manager ("AGM") of the JFK Depot "at all relevant times" with respect to the instant action. *Id.* Duke served as the General Superintendent of Transportation ("GST") of the JFK Depot starting in March 2014, *see id.*; Thompson Decl., Ex. 5 at 20:18-25, and Pome served as the GST of the JFK Depot starting in October 2015. *See* Palencia Decl., Ex. G at 11:19-25, 14:22-15:13.

## II.    MTA Bus organizational structure

Plaintiff describes each bus depot that MTA Bus operates as being organized hierarchically. *See* SAMF ¶¶ 2-3; Pl. Br. at 3 n.3. BOs are managed by Surface Line Dispatchers ("SLDs"), who report to General Superintendents ("GSs"). SAMF ¶ 2 (citing Thompson Decl., Ex. 2 at 17:25-19:22). GSs, including GSTs, are managed by AGMs, who report to the General Manager ("GM"). *Id.*

The responsibilities of the SLD position consist of "supervising [BOs], scheduling and assigning [BO] driving shifts or 'runs,' being on the road to monitor service and investigate incidents, [and] entering timekeeping, time off and medical information" in the Unified Time Keeping system ("UTS"). SMF ¶ 8; RSMF ¶ 8. In addition, "[m]ost" SLDs are promoted from the BO position. SMF ¶ 9; RSMF ¶ 9.

Newly promoted SLDs are required to demonstrate their performance in a "probationary period," during which "managers can evaluate the probationary SLD

and determine whether [the probationary SLD] can perform the SLD job functions successfully." SMF ¶ 16; RSMF ¶ 16.  Pursuant to MTA Bus policy, the probationary period that accompanies an employee's promotion to a new position lasts six months but can be terminated prematurely "either by decision of the employer or by choice of the employee."  Palencia Decl., Ex. I; *see* SMF ¶ 23; RSMF ¶ 23.  Further, a probationary period can be extended by up to an additional six months.  *See* Palencia Decl., Ex. I; *id.*, Ex. C at 44:25-45:06.  With respect to the decision to extend or terminate an employee's probationary period, the GST of the MTA Bus depot at which the employee works "makes [a] recommendation which is later reviewed by the depot's AGM and Zerega."[1] SMF ¶ 24; RSMF ¶ 24.  This decision is based on the "probationary SLD's violations or infractions during the probationary period."  SMF ¶ 25; RSMF ¶ 25.

At the JFK Depot, the GST "schedules probationary SLD training," and "senior" SLDs "are 'shadowed' by the probationary [SLDs]."  SMF ¶ 15; RSMF ¶ 15.  Probationary SLDs are evaluated at intervals during their probationary periods and may be counseled or receive "counselings" from the GST.  SMF ¶¶ 19-20; RSMF ¶¶ 19-20.  Counselings are "managerial decisions issued by the GST at his/her discretion, based on [the GST's] experience and training at MTA Bus," that address "infractions or violations" of MTA Bus policy by a probationary SLD and may also contain recommended "corrective actions [that] the [probationary] SLD can take."

---

[1] Zerega is an SLD training center that MTA Bus operates.  SMF ¶¶ 11-12; RSMF ¶¶ 11-12.

SMF ¶¶ 20, 22; RSMF ¶¶ 20, 22.  Plaintiff states that counselings "are expected to . . . specify[] a given rule violation or the specific nature of the alleged unsatisfactory performance."  RSMF ¶ 19 (citing Thompson Decl., Ex. 2 at 65:16-67:12).

## III.   Plaintiff's first probationary period

In 2012, plaintiff attained a score on an examination that placed him on the SLD promotion list of MTA Bus.  SMF ¶ 4; RSMF ¶ 4.  In October 2014, the management of the JFK Depot, including defendant Miller, evaluated and recommended plaintiff for a promotion to a vacant SLD position.  SMF ¶ 6; RSMF ¶ 6 (citing Thompson Decl., Ex. 20).

Plaintiff's first probationary period started on October 6, 2014.  *See* SMF ¶ 10; RSMF ¶ 10; Palencia Decl. ¶ 6.  During plaintiff's first probationary period, Miller served as the AGM and defendant Duke served as the GST of the JFK Depot.  SAMF ¶ 3.  During plaintiff's first probationary period, ███████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████ SMF ¶ 27; RSMF ¶ 27; *see* Palencia Decl., Ex. K.

On January 9, 2015, Duke extended plaintiff's first probationary period by up

to an additional six months in view of plaintiff's ██████████████████████

███████████████████████████████████████████████████████.  *See*

SMF ¶ 28; RSMF ¶ 28; Palencia Decl., Exs. I, K; *id.*, Ex. C at 48:10-19 (indicating

that if a probationary employee at MTA Bus "commit[s] an infraction, the [GS] will

review the violation or charges" and, "based on the infraction . . . determine the

remedy" — i.e., "a counseling, an extension [of the employee's probationary period],

or possible demotion back to" the BO position).  Duke provided notice to Miller of

the decision to extend plaintiff's first probationary period.  *See* Palencia Decl., Ex.

K.

On March 20, 2015, plaintiff was informed that his probationary period

would be terminated.  *See* Palencia Decl., Ex. L.  Miller provided plaintiff with the

opportunity to resign from his position so that plaintiff "could have another

opportunity to apply to an SLD promotion" at a later point.  SMF ¶ 31.  Defendants

note that plaintiff "begrudgingly agreed, submitted his resignation, and went back

to his [BO] position."  *Id.*  Plaintiff describes the circumstances of his purportedly

"voluntary" demotion as involving an underlying "condition of 'duress.'"  RSMF ¶ 31

(citing Thompson Decl., Ex. 24).

## IV.   Plaintiff's internal complaint

On April 22, 2015, following his "demotion" to the BO position, plaintiff filed

an internal complaint that was assigned to the Office of Special Investigations and

Security ("SIS") of MTA Bus.  *See* SMF ¶¶ 32-33; RSMF ¶¶ 32-33; Palencia Decl.,

Exs. N, O.  Lora Hinds ("Hinds") and Rehan Munsif ("Munsif"), MTA Bus employees

who were promoted to the SLD position at approximately the same time as plaintiff,

and whose probationary periods were terminated at approximately the same time,

also filed internal complaints.  *See* SMF ¶ 32; RSMF ¶ 32; Palencia Decl., Ex. F.

Plaintiff's internal complaint addressed the alleged inadequacy of SLD training at

the JFK Depot, which, according to plaintiff, had resulted in his "demotion."  SMF

¶¶ 33, 35; RSMF ¶¶ 33, 35; *see* Palencia Decl., Exs. N, O.  SIS investigated the

adequacy of the training that plaintiff and the other complainants had received but

did not investigate whether the "complainants' probationary performance [had]

warranted a demotion."  SMF ¶ 33; RSMF ¶ 33.

On June 17, 2016, SIS issued a report concluding that a disproportionate

number of probationary SLDs at the JFK Depot had not been promoted to

permanent positions.  SMF ¶ 34; RSMF ¶ 34.  Further, SIS recommended that the

complainants be provided with another opportunity to serve as probationary SLDs

at the JFK Depot.  SMF ¶ 34; RSMF ¶ 34; *see* Palencia Decl., Ex. O.  In accordance

with this recommendation, plaintiff was "promoted to [the] probationary SLD"

position for a second time in August 2016.  SMF ¶ 36; RSMF ¶ 36; *see* Thompson

Decl., Ex. 26.

## V.    Plaintiff's second probationary period

Plaintiff's second probationary period started on August 8, 2016.  *See*

Thompson Decl., Ex. 26.  During this period, defendant Miller served as the AGM

and defendant Pome served as the GST of the JFK Depot.  SMF ¶¶ 40, 43; RSMF

¶¶ 40, 43.  Pome reported to Miller.  SMF ¶ 43; RSMF ¶ 43.

Pome counseled plaintiff on several occasions during his second probationary

period.  *See* Thompson Decl., Exs. 25-29.  For instance, on October 18, 2016, Pome

issued a statement finding plaintiff's performance ███████████████████████

█████████ and "satisfactory" in 10 categories.  SMF ¶ 46; RSMF ¶ 46; *see* Thompson

Decl., Ex. 26 ("October 2016 Statement").  Pome selected 17 categories as "N/A" to

plaintiff and did not complete 15 categories.  *See* October 2016 Statement.  On this

date, ██████████████████████████████████████████████████████████████

SMF ¶ 47; RSMF ¶ 47; *see* Palencia Decl., Ex. Q.

On December 20, 2016, Pome issued a statement finding plaintiff's

performance to be ████████████████████████ and "satisfactory" in 32

categories.  SMF ¶ 48; RSMF ¶ 48; *see* Thompson Decl., Ex. 28 ("December 2016

Statement").  Pome selected 11 categories as "N/A" to plaintiff and did not complete

four categories.  *See* December 2016 Statement.  On this date, █████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████ SMF ¶

48 (citing Palencia Decl., Ex. R); RSMF ¶ 48; *see* December 2016 Statement.

On January 20, 2017, Pome █████████████████████████████████████

███████████████████████████████ SMF ¶ 49; RSMF ¶ 49.  Pome noted in

this counseling statement that on January 11, 2017, plaintiff ████████████████

████████████████████████████████████████████████████████

███████████████████████████████████. Palencia Decl., Ex. S.  Pome

stated also that on January 13, 2017, plaintiff had █████████████████████████

███████████████████  *Id.*  Further, on this date, Pome extended

plaintiff's second probationary period by up to an additional six months.  SMF ¶ 50;

RSMF ¶ 50; *see* Palencia Decl., Ex. I.  Pome provided notice to Miller of the decision

to extend plaintiff's second probationary period.  *See* Palencia Decl., Ex. S.

On March 17, 2017, Pome issued a statement finding plaintiff's performance

to be ████████████████████ and "satisfactory" in 14 categories.  *See*

Thompson Decl., Ex. 29 ("March 2017 Statement").  Pome selected 23 categories as

"N/A" to plaintiff and did not complete six categories.  *See id.*  On this date, █████

█████████████████████████████████████████████████████████

██████████████████████  SMF ¶ 51; RSMF ¶ 51; *see* Palencia Decl., Ex. T.

On April 10, 2017, plaintiff █████████████████████████████

██████████████████████████████████  SMF ¶ 54; RSMF ¶

54.  Pome noted that plaintiff ██████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████.  Palencia Decl., Ex. W.  In addition, Pome

stated that plaintiff ████████████████████████████.  *Id.*  On

this date, Pome, who provided notice to Miller, █████████████████████████

███████████████.  SMF ¶ 55; RSMF ¶ 55; *see* Palencia Decl., Ex. W.

**VI.**





## VII.   Plaintiff's filing of his complaint in the instant action

On December 26, 2018, plaintiff commenced the instant action before the

U.S. District Court for the Southern District of New York (the "Court").  As a pro se

litigant, plaintiff filed his complaint using the template complaint provided by the

Court.[2]  *See* Compl.  The Template Complaint provides "checkboxes for statutes that

a plaintiff wishes to claim violation of and then checkboxes for the alleged adverse

employment actions."  *Ramirez v. NYP Holdings, Inc.*, No. 18 CIV. 12058 (KPF),

2020 WL 470011, at *3 n.3 (S.D.N.Y. Jan. 29, 2020).

Plaintiff selected in Sections III.A and III.B of the Template Complaint that

"[t]his employment discrimination lawsuit is brought under" the following statutes:

(1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, for

employment discrimination on the basis of race or color; (2) 42 U.S.C. § 1981, for

---

[2] *See Complaint – Employment Discrimination* ("Template Complaint"), U.S. DISTR. CT. FOR THE S. DIST. OF N.Y., https://www.nysd.uscourts.gov/forms/complaint-employment-discrimination (last visited July 18, 2023).

intentional employment discrimination on the basis of race; (3) Rehabilitation Act of 1973, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance; (4) Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability; (5) New York State Human Rights Law, N.Y. Exec. L. §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics or marital status; and (6) New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage or citizenship status.  Compl. at Sections III.A-III.B.

Further, plaintiff selected in Section IV.A of the Template Complaint that defendants "took the following adverse employment actions" against him: (1) terminated plaintiff's employment; (2) did not promote plaintiff; (3) did not accommodate plaintiff's disability; (4) provided plaintiff with terms and conditions of employment different from those of similar employees; (5) retaliated against plaintiff; and (6) harassed plaintiff or created a hostile work environment.  *Id.* at Section IV.A.

Subsequent to plaintiff's filing of his complaint, plaintiff accepted representation by pro bono counsel.  *See* ECF Nos. 8, 27, 37-39, 51-53, 76.

## JURISDICTION AND LEGAL STANDARD

The court exercises subject matter jurisdiction over plaintiff's federal law claims pursuant to 28 U.S.C. § 1331. 28 U.S.C. § 1331. The court exercises supplemental jurisdiction over plaintiff's claims brought under the NYSHRL and NYCHRL pursuant to 28 U.S.C. § 1367(a), as these claims "form part of the same case or controversy" as plaintiff's federal law claims. *Id.* § 1367(a).

FRCP 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Further, a fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

In evaluating a motion for summary judgment, the Court is required to "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citing *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 572 (2d Cir. 1993)). However, to defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party is required instead to point to "particular parts of

materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for

purposes of the motion only), admissions, interrogatory answers, or other

materials." Fed. R. Civ. P. 56(c)(1)(A). "Conclusory allegations, conjecture, and

speculation . . . are insufficient to create a genuine issue of fact," and "[t]he mere

existence of a scintilla of evidence supporting the non-movant's case is also

insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones

Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (citation omitted) (internal quotation

marks omitted).

With respect to employment discrimination actions, the U.S. Court of Appeals

for the Second Circuit ("Second Circuit") has stated that "direct evidence of

discriminatory intent is rare and such intent often must be inferred from

circumstantial evidence." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603

(2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

Nonetheless, "summary judgment remains available for the dismissal of

discrimination claims in cases lacking genuine issues of material fact." *McLee v.

Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see Abdu-Brisson v. Delta Air

Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary

judgment may be appropriate even in the fact-intensive context of discrimination

cases.").

## DISCUSSION

I.    **Plaintiff's claims in the instant action**

    A.    **Legal framework**

A pro se litigant who uses the Court's Template Complaint to file a complaint in an employment discrimination action is required to select the statutes pursuant to which the litigant seeks to bring the action. *See* Compl. at Sections III.A-III.B. The Template Complaint lists several federal statutes as well as the NYSHRL and NYCHRL. *See id.* These statutes vary as to whether each permits an individual defendant to be held liable in a discrimination action.

With respect to the listed federal statutes, the Second Circuit has stated that "individuals are not subject to liability under Title VII." *Sassaman v. Gamache*, 566 F.3d 307, 315-16 (2d Cir. 2009) (internal quotation marks omitted) (quoting *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)). Similarly, individuals are not subject to liability under either the ADA or the Rehabilitation Act. *See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). However, an individual defendant who is a "supervisor[]" and is "personally involved" in the alleged discriminatory conduct may be held liable for a violation of 42 U.S.C. § 1981. *Hicks v. IBM*, 44 F. Supp. 2d 593, 597 (S.D.N.Y. 1999); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000).

With respect to the NYSHRL, an individual defendant may be held liable for a violation of the statute in circumstances in which: (1) "the individual defendant is considered an 'employer'"; or (2) "the defendant aided and abetted the unlawful

discriminatory acts of others." *Xiang v. Eagle Enters., LLC*, No. 19 CIV. 1752 (PAE), 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020) (quoting N.Y. Exec. L. § 296(1), (6)).  An individual defendant is considered an "employer" within the meaning of the NYSHRL "when that individual has an ownership interest in the relevant organization or the . . . power to hire or fire" employees.  *Dodd v. City Univ. of New York*, 489 F. Supp. 3d 219, 268 (S.D.N.Y. 2020) (quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d. Cir 2012)).  Further, an individual defendant may be held liable for aiding and abetting unlawful discrimination in circumstances in which the individual "actually participates in the conduct giving rise to a discrimination claim." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021) (quoting *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011)).

With respect to the NYCHRL, "individual liability may be imposed 'regardless of ownership or decision-making power,' so long as the individual defendant actually participated in the conduct giving rise to the claim." *Chen v. Shanghai Cafe Deluxe, Inc.*, No. 17CV02536 (DF), 2019 WL 1447082, at *9 (S.D.N.Y. Mar. 8, 2019) (quoting *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012)).

## B. Analysis

As discussed, plaintiff used the Template Complaint provided by the Court's Pro Se Office to file his complaint in the instant action.  *See supra* Background at Section VII; Compl.  The Court has stated that the Template Complaint may

contribute to a "lack of clarity as to exactly which [selected] adverse employment actions" correspond to each listed statute. *Ramirez*, 2020 WL 470011, at *3 n.3. Accordingly, the Court previously has evaluated the selections of a pro se litigant in view of the litigant's briefing in the action. *See, e.g.*, *id.* at *7 n.6; *Rouin v. Donahoe*, No. 14-CV-442S, 2015 WL 6509747, at *2 (W.D.N.Y. Oct. 28, 2015).

In view of plaintiff's briefing as well as the foregoing discussion with respect to the listed statutes that allow or preclude individual liability as a matter of law, *see supra* Section I.A, plaintiff brings in the instant action claims of discrimination based on race, retaliation, failure to accommodate and a hostile work environment. Specifically, plaintiff brings: (1) his claims of discrimination based on race pursuant to 42 U.S.C. § 1981, the NYSHRL and NYCHRL against all defendants, and his claim pursuant to Title VII against MTA Bus only; (2) his retaliation claims pursuant to 42 U.S.C. § 1981, the NYSHRL and NYCHRL against all defendants, and his claim pursuant to Title VII against MTA Bus only; (3) his failure to accommodate claims pursuant to the NYSHRL and NYCHRL against all defendants, and his claims pursuant to the ADA and Rehabilitation Act against MTA Bus only; and (4) his claims of a hostile work environment pursuant to 42 U.S.C. § 1981, the NYSHRL and NYCHRL against all defendants, and his claim pursuant to Title VII against MTA Bus only.

The court proceeds to evaluate defendants' motion for summary judgment with respect to each of plaintiff's claims.

## II.      Discrimination based on race

### A.      Legal framework

#### 1.      Applicable statutes

Plaintiff brings his race discrimination claims pursuant to Title VII, 42

U.S.C. § 1981, the NYSHRL and NYCHRL.  *See* Compl. at Sections III.A-III.B;

*supra* Section I.B.

Title VII provides that it is "an unlawful employment practice for an

employer . . . to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such

individual's race [or] color."  42 U.S.C. § 2000e-2(a)(1).

42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the

United States shall have the same right in every State and Territory . . . to the full

and equal benefit of all laws and proceedings for the security of persons and

property as is enjoyed by white citizens, and shall be subject to like punishment,

pains, penalties, taxes, licenses, and exactions of every kind, and to no other."  42

U.S.C. § 1981.

The NYSHRL provides that it is unlawful for an employer "to refuse to hire

or employ or to bar or to discharge from employment [an] individual or to

discriminate against such individual in compensation or in terms, conditions or

privileges of employment" on the basis of that individual's race or color.  N.Y. Exec.

L. § 296(1)(a).

The NYCHRL provides that it is unlawful for an employer to "represent that any employment or position is not available when in fact it is available . . . [t]o refuse to hire or employ or to bar or to discharge from employment [a] person . . . [or] [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment" on the basis of that person's "actual or perceived" race or color.  N.Y.C. Admin. Code § 8-107(1)(a)(1)-(3).

## 2.     Discrimination based on race pursuant to Title VII, 42 U.S.C. § 1981 and the NYSHRL

At the summary judgment stage, race discrimination claims brought pursuant to Title VII, 42 U.S.C. § 1981 and the NYSHRL are evaluated under the three step, burden-shifting framework set forth by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993).  *See Simmons v. Akin Gump Strauss Hauer & Feld, LLP*, 508 F. App'x 10, 12 (2d Cir. 2013) (summary order); *Ruiz v. Cnty. of Rockland,* 609 F.3d 486, 491 (2d Cir. 2010); *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).

The first step of the *McDonnell Douglas* framework requires that the plaintiff establish a prima facie case of race discrimination.  *See Pinkston-Shay v. Metro. Transp. Auth.*, No. 21-1070-CV, 2022 WL 893394, at *2 (2d Cir. Mar. 28, 2022) (summary order) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015)).  A prima facie case of race discrimination requires that the plaintiff produce evidence that would be sufficient to demonstrate that: (1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse

employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  *Bentley-Ammonds v. Northwell Health, Inc.*, No. 21-835-CV, 2022 WL 893716, at *1 (2d Cir. Mar. 28, 2022) (summary order) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).

The Second Circuit has held that a plaintiff may demonstrate an inference of discriminatory intent under a theory of "disparate treatment" by "showing that the employer . . . treated [the plaintiff] *less favorably* than a *similarly situated employee* outside [the plaintiff's] protected group."  *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (emphasis supplied).  Further, the Second Circuit has stated that "'the evidence necessary to satisfy [the] initial burden' of establishing that an adverse employment action occurred under circumstances giving rise to an inference of discrimination is 'minimal.'"  *Littlejohn*, 795 F.3d at 313 (quoting *Zimmermann v. Assocs. First Cap. Corp.*, 251 F.3d 376, 381 (2d Cir. 2001)).  In addition, the elements of a prima facie case of race discrimination are the same under Title VII, 42 U.S.C. § 1981 and the NYSHRL.  *See Vivenzio*, 611 F.3d at 106; *Tubo v. Orange Reg'l Med. Ctr.*, 690 F. App'x 736, 738 (2d Cir. 2017) (summary order) (citing *Vivenzio*, 611 F.3d at 106).

Should the plaintiff meet this initial burden, the second step of *McDonnell Douglas* shifts the burden to the defendant, "which is required to offer a legitimate, non-discriminatory rationale for its actions."  *Terry*, 336 F.3d at 138.

Should the defendant meet this burden, the third step of *McDonnell Douglas* then shifts the burden back to the plaintiff to "produce sufficient evidence to permit a reasonable factfinder to conclude that the [employer's] proffered reasons are *pretextual*." *Monachino v. Bair*, 481 F. App'x 20, 21 (2d. Cir. 2012) (summary order) (emphasis supplied) (citing *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001)); *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (quoting *McDonnell Douglas*, 411 U.S. at 804) (citing *Graham*, 230 F.3d at 38).

### 3.    Discrimination based on race pursuant to the NYCHRL

As with race discrimination claims brought pursuant to Title VII, 42 U.S.C. § 1981 and the NYSHRL, race discrimination claims brought pursuant to the NYCHRL are analyzed under the *McDonnell Douglas* framework.  *See Aiken v. MTA N.Y.C. Transit*, No. 18CV11756 (GBD) (DF), 2021 WL 6621579, at *14 (S.D.N.Y. Sept. 2, 2021), *report and recommendation adopted sub nom. Aiken v. MTA N.Y.C. Transit*, No. 18CV11756GBDDF, 2021 WL 4481094 (S.D.N.Y. Sept. 29, 2021); *Beharry v. City of New York*, No. 18-CV-2042 (AJN), 2020 WL 6135147, at *6 (S.D.N.Y. Oct. 19, 2020) (quoting *Farzan v. Wells Fargo Bank, N.A.*, No. 12 CIV. 1217 RJS JLC, 2013 WL 6231615, at *15 (S.D.N.Y. Dec. 2, 2013), *subsequently aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015)).  However, the Second Circuit has "instructed district courts that the standard for liability is *broader* under the NYCHRL," *Forte v. Liquidnet Holdings, Inc.*, 675 F. App'x 21, 26 (2d Cir. 2017) (summary order) (emphasis supplied) (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)), and that

NYCHRL claims should "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof . . . ." *Mihalik*, 715 F.3d at 109 (internal quotation marks omitted).  Further, the Court has stated that if a plaintiff meets the "more stringent standard" under the applicable federal and state statutes, then a claim brought pursuant to the NYCHRL "necessarily also survives summary judgment." *Sivio v. Vill. Care Max*, 436 F. Supp. 3d 778, 796 n.11 (S.D.N.Y. 2020) (citing *Makinen v. City of New York*, 30 N.Y.3d 81, 89, 86 N.E.3d 514, 520 (2017)), 802; *see Armstrong v. Metro. Transp. Auth.*, No. 07 CIV. 3561 DAB, 2015 WL 992737, at *6 (S.D.N.Y. Mar. 3, 2015) (stating that the "federal and state civil rights laws [are] a floor below which the [NYCHRL] cannot fall" (internal quotation marks omitted)).

### B.     Positions of the parties

Defendants argue that plaintiff fails to establish a prima facie case of race discrimination.  *See* Defs. Br. at 10-16; Defs. Reply Br. at 2-5.  Defendants maintain that plaintiff does not produce sufficient evidence demonstrating an "inference of discriminatory intent."  Defs. Br. at 15.  According to defendants, plaintiff's claims with respect to the alleged favorable treatment received by certain white SLDs at the JFK Depot "are not only inadmissible as anecdotal evidence but also fail to show any circumstances giving rise to an inference of discriminatory animus."  *Id.* at 13.  Defendants contend in this regard that the white SLDs to whom plaintiff refers were not "similarly situated" to plaintiff, as those "employees were not probationary [SLDs] but permanent [SLDs]."  *Id.* at 16.

Defendants argue also that plaintiff "fails to mention that his SLD probationary cohort included a white SLD" — Joseph Rodonich ("Rodonich") — who, according to defendants, "was also given the option to resign when he was informed that his probationary termination would be terminated." *Id.* Defendants maintain that this evidence undermines further "plaintiff's conclusory assertions that he was treated differently because of his race . . . ." *Id.* In addition, defendants maintain with respect to the alleged "racially charged" comments made by certain MTA Bus supervisors that those supervisors were "not decisionmakers or in any way related to plaintiff's probationary evaluation process, or decisions regarding his

███████████████████████████████████████████  Defs. Reply. Br. at 5.

Further, defendants argue that they meet their burden at the second step of *McDonnell Douglas* to "offer[] a legitimate, nondiscriminatory reason for terminating plaintiff's SLD probation . . . ." *Id.* at 2. Defendants maintain that the

████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████  Defs. Br. at 13.

Plaintiff argues that he establishes a prima facie case of race discrimination. *See* Pl. Br. at 8-19. To start, plaintiff contends that he was "qualified" for the SLD position. *See id.* at 9-11. Plaintiff maintains that "[n]umerous indicators show that [he] was qualified to be an SLD," including that: (1) he was "promot[ed]" to the SLD position; (2) he "passed the [MTA Bus] exam required for the promotion" to the SLD

position; (3) he "attended the weeks-long training at Zerega, where he was instructed on the basic duties" of the SLD position; and (4) he received certain "positive training reviews of his understanding of these duties." *Id.* at 9-10. Plaintiff argues further that he suffered adverse employment actions in being "unfairly reprimanded" through the counselings that he received as a probationary SLD. *Id.* at 11-12.

In addition, plaintiff contends that the alleged "unfair discipline" that he received "give[s] rise to an inference of race discrimination," as "[r]ecord evidence demonstrates that similarly situated white SLDs were treated more favorably than [plaintiff] and other minority SLDs" at the JFK Depot. *Id.* at 12-13. Plaintiff maintains that the alleged favorable treatment received by certain white SLDs demonstrates an inference of discriminatory intent notwithstanding that the SLDs to whom plaintiff refers were permanent SLDs, rather than probationary SLDs. *See id.* at 14-17. Further, plaintiff argues with respect to Rodonich that "the mere existence of a white SLD in [plaintiff's] probationary cohort who was also demoted to Bus Operator does not negate an inference of disparate discipline for [plaintiff]." *Id.* at 18 n.10 (emphases omitted). Plaintiff points also to evidence indicating that "supervisors, on numerous occasions, made racially charged comments either to [plaintiff] or in front of him." *Id.* at 19.

Plaintiff contends further that defendants do not meet their burden at the second step of *McDonnell Douglas* to "articulate some legitimate, non-

discriminatory reason" for the adverse employment actions alleged in the instant

action. *Id.* (internal quotation marks omitted).

### C.    Analysis

The court addresses first plaintiff's race discrimination claims brought

against MTA Bus pursuant to Title VII, 42 U.S.C. § 1981 and the NYSHRL, before

turning to plaintiff's race discrimination claim brought against MTA Bus pursuant

to the NYCHRL.  The court then addresses plaintiff's claims brought specifically

against the individual defendants pursuant to 42 U.S.C. § 1981, the NYSHRL and

NYCHRL.  *See supra* Section I.B (indicating that of the statutes that plaintiff

selected to bring his race discrimination claims, 42 U.S.C. § 1981, the NYSHRL and

NYCHRL provide for individual liability as a matter of law).

### 1.    Plaintiff's claims brought pursuant to Title VII, 42 U.S.C. § 1981 and the NYSHRL

#### a.    *McDonnell Douglas* step one

##### i.    Protected class

It is undisputed that plaintiff, a Black man, is a member of a "protected

class."  *See* SMF ¶ 1; RSMF ¶ 1; *McDonnell Douglas*, 411 U.S. at 802.

##### ii.    Qualified for the position

Plaintiff produces evidence that would be sufficient to demonstrate that he

was "qualified" for the SLD position.  *Bentley-Ammonds*, 2022 WL 893716, at *1

(quoting *Terry*, 336 F.3d at 138); *see Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d

Cir. 2008) (citing *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)).

The Second Circuit has held that an employee is required to demonstrate only minimal qualification for a position to establish the second element of a prima facie case of race discrimination. *See Owens v. N.Y.C. Hous. Auth.*, 934 F.2d 405, 409 (2d Cir. 1991) ("*McDonnell Douglas* requires only a minimal showing of qualification . . . that [the employee] 'possesses the basic skills necessary for performance of [the] job.'" (quoting *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir. 1978))). Here, the record indicates that plaintiff was promoted on two occasions to the probationary SLD position, *see* SMF ¶¶ 6, 36; RSMF ¶¶ 6, 36; Palencia Decl. ¶ 6, Ex. Q, which is sufficient at the summary judgment stage to satisfy plaintiff's burden to demonstrate that he was "minimally qualified" for the position. *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001), *as amended* (Apr. 20, 2001) ("[B]y hiring the employee, the employer itself has already expressed a belief that she is minimally qualified.").

### iii.    Adverse employment action

Plaintiff produces evidence that would be sufficient to demonstrate that he "suffered an adverse employment action." *Bentley-Ammonds*, 2022 WL 893716, at *1 (quoting *Terry*, 336 F.3d at 138).

The Second Circuit previously has stated that an "adverse employment action [is] a 'materially adverse change' in the terms and conditions of employment." *Sanders v. N.Y.C. Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (quoting *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999)). Further, the Court has stated that "*[n]egative evaluations* can be adverse

employment actions only if they give rise to material adverse changes in work conditions." *Hawana v. City of New York*, 230 F. Supp. 2d 518, 528 (S.D.N.Y. 2002) (emphasis supplied) (citing *Figueroa v. City of New York*, 198 F. Supp. 2d 555, 568 (S.D.N.Y. 2002), *aff'd*, 118 F. App'x 524 (2d Cir. 2004); *Valentine v. Standard & Poor's*, 50 F. Supp. 2d 262, 283-84 (S.D.N.Y. 1999), *aff'd*, 205 F.3d 1327 (2d Cir. 2000)); *see Sanders*, 361 F.3d at 755 ("Examples of . . . a [materially adverse] change include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" (quoting *Terry*, 336 F.3d at 138)).

The record indicates that as a probationary SLD, plaintiff ██████████████ ███████████████████████████████████████████████. *See* SMF ¶¶ 20, 22, 27, 47-51, 54; RSMF ¶¶ 20, 22, 27, 47-51, 54; Palencia Decl., Ex. K; Thompson Decl., Exs. 25-29.  Plaintiff produces evidence that would be sufficient for a reasonable juror to conclude that ████████████ resulted in a "material adverse change[]" in the conditions of his employment at MTA Bus — i.e., plaintiff's "demotion" from his probationary SLD status on two occasions.  *Hawana*, 230 F. Supp. 2d at 528; *see* SMF ¶¶ 30-31, 55; RSMF ¶¶ 30-31, 55.  Consequently, the evidence to which plaintiff points satisfies his burden to demonstrate that he suffered an "adverse employment action."  *Hawana*, 230 F. Supp. 2d at 528.

### iv.    Inference of discriminatory intent

Plaintiff produces evidence that would be sufficient to demonstrate that the adverse employment actions alleged in the instant action "occurred under circumstances giving rise to an inference of discriminatory intent." *Bentley-Ammonds*, 2022 WL 893716, at *1 (quoting *Terry*, 336 F.3d at 138). Specifically, plaintiff demonstrates that he was subject to "disparate treatment" in being treated "less favorably than . . . similarly situated employee[s] outside [plaintiff's] protected group." *Graham*, 230 F.3d at 39.

The Second Circuit has held that to establish an inference of discriminatory intent under a theory of disparate treatment, the proposed comparators to which a plaintiff refers are required to be "similarly situated in all material respects." *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) (internal quotation marks omitted) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)). Whether a comparator is similarly situated in "'all material respects' . . . varies somewhat from case to case," *Graham*, 230 F.3d at 40, and "[o]rdinarily . . . [presents] a question of fact for the jury." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). The Second Circuit has stated further that this standard requires an "objectively identifiable basis for comparability," *Graham*, 230 F.3d at 40 (internal quotation marks omitted) (quoting *Cherry v. Am. Tel. & Tel. Co.*, 47 F.3d 225, 229 (7th Cir. 1995)), which may be determined by evaluating the "workplace standards" to which the plaintiff and the comparators were subject as well as the "conduct" in which they were engaged. *Id.* (citing

*Norville*, 196 F.3d at 96).  Moreover, this standard requires a "reasonably close resemblance of the facts and circumstances of [the] plaintiff's and comparator's cases, rather than a showing that both cases are identical."  *Id.* (citing *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 20 (1st Cir. 1999)).

Moreover, a plaintiff who held a *probationary* position may buttress a claim of disparate treatment by producing evidence regarding the alleged favorable treatment received by a *permanent* employee.  *See Woods v. Newburgh Enlarged City Sch. Dist.*, 288 F. App'x 757, 760 (2d Cir. 2008) (summary order) (citing *Feingold*, 366 F.3d at 153); *Akinyemi v. Chertoff*, No. 07 CIV. 4048 (AJP), 2008 WL 1849002, at *4 (S.D.N.Y. Apr. 25, 2008) (citing *Feingold*, 366 F.3d at 153-54) ("[T]he difference between probationary and permanent employees does not, by itself, eliminate the possibility that a comparator is similarly situated.").  The Second Circuit held in *Feingold* that in circumstances in which a probationary employee received discipline for certain conduct, evidence demonstrating that permanent employees were not "disciplined *at all*" for comparable conduct may support an inference of discriminatory intent.  *Feingold*, 366 F.3d at 153.

Plaintiff produces evidence that would be sufficient for a reasonable juror to conclude that he was subject to disparate treatment in being treated "less favorably" than "similarly situated" MTA Bus employees.  *Norville*, 196 F.3d at 95 (quoting *Shumway*, 118 F.3d at 64).  This evidence concerns specifically Anthony Bosco ("Bosco") and Robert Scirica ("Scirica"), two permanent SLDs employed at the

JFK Depot who are not members of plaintiff's protected class.[3]  *See* Palencia Decl.,

Ex. F.  In particular, the record includes two exhibits that consist of email

correspondence between certain employees of MTA Bus regarding the lack of

disciplinary action taken against Bosco and Scirica following their apparent

infractions of MTA Bus policy.  *See* Thompson Decl., Exs. 9, 11.  First, Exhibit 9 of

the Thompson Declaration indicates that on August 16, 2017, Thomas Losito of

MTA Bus emailed defendant Miller regarding an apparent error that Bosco had

made in sending an "[out of service]" bus on the road.  *Id.*, Ex. 9.  This email

correspondence indicates further that "[n]o discipline was implemented for" Bosco

as a result of this apparent error.  *Id.*  Second, Exhibit 11 of the Thompson

Declaration consists of email correspondence between certain MTA Bus employees

indicating that Scirica "was never disciplined" for an apparent error in failing to

update the UTS to reflect that a BO had "passed medical" clearance, which resulted

in that BO being "sent home."  *Id.*, Ex. 11.

      Contrary to defendants' assertion, *see* Oral Arg. Tr. at 16:04-12, ECF No. 79,

the foregoing exhibits may properly be considered at the summary judgment stage,

---

[3] Plaintiff also referenced in his deposition and complaint the alleged favorable
treatment received by certain other SLDs employed at MTA Bus, including John
Savelli, Declon Van Parys, Joseph Marzano, John McMahon and Carl Walsh.  *See*
Palencia Decl., Ex. B at 36:22-37:10, 38:07-14; *id.*, Ex. F; Compl. at Attach. A.
However, plaintiff does not produce non-testimonial evidence indicating that these
individuals were treated more favorably than plaintiff, and "testimony [as to
disparate treatment] alone is insufficient to create a genuine issue of material fact."
*Henvill v. Metro. Transp. Auth.*, No. 13 CIV. 7501 (GBD), 2022 WL 4467338, at *5
(S.D.N.Y. Sept. 26, 2022) (citing *Shumway*, 118 F.3d at 64); *see Gelin v. Geithner*,
No. 06-CV-10176KMK, 2009 WL 804144, at *18 (S.D.N.Y. Mar. 26, 2009), *aff'd*, 376
F. App'x 127 (2d Cir. 2010).

as these exhibits could be presented in admissible form at trial in accordance with

Federal Rule of Evidence 801(d)(2)(D).  *See* Fed. R. Evid. 801(d)(2)(D) (providing

that a statement "offered against an opposing party" that is made by such a party's

agent or employee "on a matter within the scope of [the employment] relationship . .

. while it existed" constitutes admissible non-hearsay); *Arista Recs. LLC v. Lime

Grp. LLC*, 784 F. Supp. 2d 398, 420 (S.D.N.Y. 2011); *Celotex Corp. v. Catrett*, 477

U.S. 317, 324 (1986) (holding that the nonmoving party need not "produce evidence

in a form that would be admissible at trial in order to avoid summary judgment").

The record includes also certain other evidence with respect to the alleged

favorable treatment received by Bosco and Scirica.  *See Santos v. Murdock*, 243 F.3d

681, 683 (2d Cir. 2001) (citing *Celotex*, 477 U.S. at 324).  For instance, plaintiff

points to the declaration of Shelby Chadwick ("Chadwick"), a former MTA Bus

employee who allegedly witnessed Bosco "commit a violation that went

undisciplined" — i.e., in approximately March 2017, Chadwick witnessed that Bosco

apparently had been "late in sending out [the] morning's buses," but when Miller

observed that "Bosco was responsible, [Miller] just greeted Bosco, turned around

and walked away."  Decl. of Shelby Chadwick ("Chadwick Decl.") ¶ 5, ECF No. 66.

In addition, plaintiff stated in his deposition that certain SLDs, including Bosco and

Scirica, apparently had received "private training" at the JFK Depot in what

plaintiff described as an indication of an "old boys club" favoring white SLDs.

Palencia Decl., Ex. B at 38:07-40:19, 175:02-12, 181:19-22.

Moreover, the record indicates that there is a genuine dispute of material fact as to whether plaintiff was "similarly situated" to Bosco and Scirica notwithstanding that plaintiff was a probationary SLD and Bosco and Scirica were permanent SLDs when each allegedly violated MTA Bus policy. *Graham*, 230 F.3d at 40. Plaintiff demonstrates in this regard an "objectively identifiable basis for comparability" between himself and Bosco and Scirica. *Id.* (internal quotation marks omitted) (quoting *Cherry*, 47 F.3d at 229).

To start, plaintiff produces evidence that would be sufficient for a reasonable juror to conclude that probationary and permanent SLDs at the JFK Depot are subject to the same "workplace standards." *Id.* (citing *Norville*, 196 F.3d at 96). The evidence to which plaintiff points demonstrates that probationary and permanent SLDs report to the same supervisors. *See, e.g.*, SAMF ¶ 2 (citing Thompson Decl., Ex. 2 at 17:25-19:22) (indicating that each bus depot that MTA Bus operates is organized hierarchically, with SLDs reporting to General Superintendents, who report to AGMs and the GM). Moreover, plaintiff produces evidence that would be sufficient for a reasonable juror to conclude that he and Bosco and Scirica reported specifically to the same supervisors, including Miller, who served as the AGM of the JFK Depot "at all relevant times" with respect to the instant action. *Id.* ¶ 3; *see, e.g.*, Thompson Decl., Ex. 11 ("This email is . . . in reference to JFK Depot Dispatcher Scirica who is . . . favored by AGM Miller."); Chadwick Decl. ¶ 5 (indicating that Chadwick allegedly had witnessed Miller "storm out to the [JFK Depot] yard to see who was responsible for letting buses off

the lot late," but when Miller observed that "Bosco was responsible, [Miller] just greeted Bosco, turned around and walked away"); Palencia Decl., Ex. B at 36:22-40:19; *see also Akinyemi*, 2008 WL 1849002, at *5 ("Whether . . . a plaintiff reports to the same supervisor as her comparator is an important factor in finding that [the] plaintiff and the comparator are similarly situated.").  In addition, permanent and probationary SLDs are assigned the same workplace responsibilities, including "supervising [BOs], scheduling and assigning [BO] driving shifts or 'runs,' being on the road to monitor service and investigate incidents, [and] entering timekeeping, time off and medical information" in the UTS.  SMF ¶ 8; RSMF ¶ 8.

Further, plaintiff points to evidence that would be sufficient for a reasonable juror to conclude that probationary and permanent SLDs at the JFK Depot are subject to the same disciplinary procedures.  *See Akinyemi*, 2008 WL 1849002, at *4; *Graham*, 230 F.3d at 40 (citing *Norville*, 196 F.3d at 96).  Plaintiff produces evidence indicating that infractions of MTA Bus policy by both probationary and permanent SLDs may be memorialized on the same forms — i.e., the "Violation of Rules" form or the "Disciplinary Action Report."  *See* RSMF ¶ 26; Thompson Decl., Exs. 10, 12-13; Palencia Decl., Ex. G at 130:22-131:05 (indicating that defendant Pome testified that the "Violation of Rules" form "is used for all Dispatchers").  Moreover, Pome stated in her deposition that it is within the discretion of an "individual Manager . . . to write a violation" for an SLD.  *See* Palencia Decl., Ex. G at 133:21-134:06.  Plaintiff points also to evidence indicating that the distinction between probationary and permanent status is not material with respect to whether

an SLD may be disciplined for an infraction of MTA Bus policy.  *See* SMF ¶ 20

(indicating that "counseling[s]" are intended to address and rectify a probationary

SLD's "infractions or violations" of MTA Bus policy); RSMF ¶¶ 20, 26; Palencia

Decl., Ex. G at 130:22-131:05; Thompson Decl., Exs. 12-13.

Plaintiff also produces evidence indicating that he and Bosco and Scirica

specifically were engaged in conduct potentially of "comparable seriousness."

*Graham*, 230 F.3d at 40 (citing *Norville*, 196 F.3d at 96).  As discussed *supra*,

Exhibits 9 and 11 of the Thompson Declaration demonstrate that Bosco and Scirica

were assigned tasks comparable to those for which plaintiff was disciplined.  *See*

Thompson Decl., Exs. 9, 11; SMF ¶¶ 27 (indicating that plaintiff ███████████

████████████████████████████████████), 49 (indicating that plaintiff

████████████████████████████████████████████████████

████████); RSMF ¶¶ 27, 49; Palencia Decl., Ex. S.  Further, plaintiff points to

defendant Duke's testimony that an ████████████████████████████

█████████ — comparable to Bosco's alleged error, *see* Thompson Decl., Ex. 9 —

████████████████████████████████████████████████████.

Thompson Decl., Ex. 5 at 175:10-176:05; *see Rodriguez v. Town of Ramapo*, 412 F.

Supp. 3d 412, 438 (S.D.N.Y. 2019) (finding disparate treatment in circumstances in

which the proposed comparators had received less discipline "for comparable — *if*

*not more serious* — offenses" (emphasis supplied)); *Senno v. Elmsford Union Free*

*Sch. Dist.*, 812 F. Supp. 2d 454, 476 (S.D.N.Y. 2011).

The Second Circuit's decision in *Feingold* supports further the conclusion that there is a genuine dispute of material fact as to whether plaintiff was similarly situated to Bosco and Scirica.  *See Feingold*, 366 F.3d at 153.  As in *Feingold*, the record indicates that Bosco and Scirica were not disciplined "*at all*" for apparent infractions of MTA Bus policy comparable to those for which plaintiff was disciplined.  *Id.*; *see* Thompson Decl., Exs. 9, 11; Chadwick Decl. ¶ 5; SMF ¶¶ 27, 49; RSMF ¶¶ 27, 49.  As such, the circumstances presented in the instant action indicate that whether Bosco and Scirica "were similarly situated is a matter of factual dispute which is best resolved by a finder-of-fact, and not on summary judgment."  *Feingold*, 366 F.3d at 153 (citing *Mandell*, 316 F.3d at 379).

Accordingly, the court concludes that plaintiff produces evidence that is sufficient to demonstrate an inference of discriminatory intent.  Plaintiff establishes the fourth element of a prima facie case of race discrimination and, consequently, meets his burden at the first step of *McDonnell Douglas*.

### b.    *McDonnell Douglas* **step two**

MTA Bus meets its burden at the second step of *McDonnell Douglas* to offer a "legitimate, non-discriminatory rationale for its actions."  *Terry*, 336 F.3d at 138.  The burden of MTA Bus at this step "is one of production, not persuasion . . . [and] can involve no credibility assessment."  *Aiken*, 2021 WL 6621579, at *14 (internal quotation marks omitted) (quoting *Espinoza v. N.Y.C. Dep't of Transp.*, 304 F. Supp. 3d 374, 387 (S.D.N.Y. 2018)).

MTA Bus points to evidence that would be sufficient for a reasonable juror to conclude that MTA Bus had a legitimate, non-discriminatory rationale ████  . *See* SMF ¶¶ 20, 22, 27, 47-55; RSMF ¶¶ 20, 22, 27, 47-55; Thompson Decl., Exs. 25-29; Palencia Decl., Exs. K, R, V-W (████████ ████████████████████████████████████████████).

On this basis, MTA Bus meets its burden at the summary judgment stage. *See Aiken*, 2021 WL 6621579, at *14, *23 (concluding that evidence indicating that the plaintiff's "job performance was unsatisfactory" was sufficient at the second step of *McDonnell Douglas*).

### c.   *McDonnell Douglas* step three

Plaintiff meets his burden at the third step of *McDonnell Douglas* to produce evidence that would "permit a reasonable fact-finder to conclude that the proffered reasons" of MTA Bus for the alleged adverse employment actions were "*pretextual.*'" *Monachino*, 481 F. App'x at 21 (emphasis supplied) (citing *Roge*, 257 F.3d at 168).

The Second Circuit has stated that a plaintiff "may carry [the] burden [of demonstrating pretext] by reference to the same evidence used to establish a prima facie case, provided that the evidence admits plausible inferences of pretext." *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 89 (2d Cir. 2019) (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000)).  Further, the Court has stated that evidence of disparate treatment may demonstrate pretext.  *See*

*Osekavage v. Sam's E., Inc.*, 619 F. Supp. 3d 379, 391 (S.D.N.Y. 2022) ("A showing that similarly situated employees belonging to a different [protected class] received more favorable treatment can also serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for . . . discrimination." (internal quotation marks omitted) (quoting *Graham*, 230 F.3d at 43) (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 108 (2d Cir. 2010); *Villar v. City of New York*, 135 F. Supp. 3d 105, 125-26 (S.D.N.Y. 2015))); *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 256 (S.D.N.Y. 2015) (quoting *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 261 (S.D.N.Y. 2009)); *Akinyemi*, 2008 WL 1849002, at *6 n.11.

For the reasons discussed *supra* Section II.C.1.a.iv, the court concludes that the evidence that plaintiff produces to demonstrate the disparate treatment that he allegedly received in comparison with Anthony Bosco and Robert Scirica also is sufficient to demonstrate pretext at the third step of *McDonnell Douglas*. *See Osekavage*, 619 F. Supp. 3d at 391; *Clark*, 96 F. Supp. 3d at 256.

This conclusion is supported further by additional evidence in the record, which, when considered in its "totality" would permit "a reasonable factfinder [to] conclude that [the] legitimate non-discriminatory reason" provided by MTA Bus was "pretextual." *Osekavage*, 619 F. Supp. 3d at 392 (citing *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). The additional evidence to which plaintiff points includes plaintiff's testimony as to the conditions of his employment at MTA Bus — i.e., plaintiff's assertion that certain supervisors made "racially charged"

comments to him.  Pl. Br. at 7; *see* Thompson Decl., Ex. 1 at 27:03-28:04 (testifying

that a supervisor stated that "they are hiring a lot of" Black individuals and that

Black employees "have their pants hanging off their ass"); *Danzer v. Norden Sys.,*

*Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) (holding that while "'stray remarks' alone do not

support a discrimination suit," when "other indicia of discrimination are properly

presented, the remarks can no longer be deemed 'stray,' and the jury has a right to

conclude that they bear a more ominous significance"); *Lewis v. Am. Sugar Ref.,*

*Inc.*, 325 F. Supp. 3d 321, 352 (S.D.N.Y. 2018).  Similarly, the alleged "incidents of

favoritism for white SLDs at the JFK Depot" that Chadwick addressed in his

declaration support further plaintiff's showing of pretext.  Chadwick Decl. ¶¶ 5-6;

*see Osekavage*, 619 F. Supp. 3d at 392 (referencing in support of the plaintiff's

showing of pretext "comments of other female employees who noted their subjective

belief that [the defendant] treated female employees differently from male

employees").

     Further, the apparent variance in defendant Pome's evaluation of plaintiff's

performance at three intervals during his second probationary period supports

plaintiff's burden to demonstrate pretext.  *See* October 2016 Statement; December

2016 Statement; March 2017 Statement; *Primmer*, 667 F. Supp. 2d at 261 ("An

employment discrimination plaintiff may . . . demonstrate pretext by showing . . .

weaknesses, implausibilities, inconsistencies, or contradictions in the employer's

proffered legitimate reasons for its action." (internal quotation marks omitted)

(quoting *Droutman v. N.Y. Blood Ctr., Inc.*, No. 03-CV-5384(DRH/ARL), 2005 WL

1796120, at *8 (E.D.N.Y. July 27, 2005))). Specifically, in the October 2016

Statement Pome found ███████████████████████████████████████████

█████████ and "satisfactory" in 10 categories. *See* October 2016 Statement. Pome

selected 17 categories as "N/A" to plaintiff and did not complete 15 categories. *See*

*id.* In the December 2016 Statement, Pome found █████████████████████████

█████████████████████████████ and "satisfactory" in 32 categories. *See* December

2016 Statement. Pome selected 11 categories as "N/A" to plaintiff and did not

complete four categories. *See id.* In the March 2017 Statement, Pome found

████████████████████████████████████████████████ and "satisfactory" in

14 categories. *See* March 2017 Statement. Pome selected 23 categories as "N/A" to

plaintiff and did not complete six categories. *See id.* To the extent that the parties

dispute the relevance of this apparent variance in the statements prepared by Pome

with respect to whether the proffered legitimate reasons of MTA Bus were

pretextual, such a dispute concerns a question of material fact that is appropriate to

resolve at trial. *See Stern v. Trustees of Columbia Univ. in New York*, 131 F.3d 305,

313 (2d Cir. 1997) ("[D]epartures from procedural regularity . . . can raise a question

as to the good faith of the process where the departure may reasonably affect the

decision." (internal quotation marks omitted) (quoting *Zahorik v. Cornell Univ.*, 729

F.2d 85, 93 (2d Cir. 1984))); *see also Lang v. Illinois Dep't of Child. & Fam. Servs.*,

361 F.3d 416, 420 (7th Cir. 2004).

Moreover, the evidence to which MTA Bus points does not detract from

plaintiff's production of evidence that "admits plausible inferences of pretext."

*Bentley*, 935 F.3d at 89 (citing *Reeves*, 530 U.S. at 143).  As discussed *supra* Section II.C.1.a.iv, the evidence to which MTA Bus points to buttress the position that plaintiff was not similarly situated to Bosco and Scirica raises a question of material fact that is appropriate to resolve at trial and not on summary judgment. *See Feingold*, 366 F.3d at 153-54.  In addition, the evidence of MTA Bus regarding Joseph Rodonich, a white probationary SLD at the JFK Depot who also apparently was demoted to the BO position, does not undermine plaintiff's showing of pretext, as the record does not include specific evidence with respect to any discipline that Rodonich may have received or the circumstances that led to his demotion.  *See* Palencia Decl., Ex. F; *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 464 (2d Cir. 1989) (denying summary judgment notwithstanding evidence indicating that the employer had treated certain white employees similarly to the plaintiff); *Clark v. THI of S.C. at Moncks Corner, LLC*, 586 F. Supp. 2d 387, 401 (D.S.C. 2007) ("While [the defendants] make much of the fact that . . . a white employee[] was also fired . . . such evidence does not negate the [plaintiff's] evidence [showing pretext].").

Consequently, and "view[ing] the evidence . . . and draw[ing] all reasonable inferences" in plaintiff's favor, *Allen*, 64 F.3d at 79 (citing *Consarc*, 996 F.2d at 572), the court concludes that plaintiff meets his burden at the third step of *McDonnell Douglas* with respect to his race discrimination claims brought pursuant to Title VII, 42 U.S.C. § 1981 and the NYSHRL.

## 2.   Plaintiff's claim brought pursuant to the NYCHRL

As discussed *supra* Section II.A.3, the Court previously has stated that if a plaintiff meets the "more stringent" summary judgment standard under the applicable federal and state statutes,[4] then a claim brought pursuant to the "broader" provisions of the NYCHRL "necessarily also survives summary judgment." *Sivio*, 436 F. Supp. 3d at 796 n.11 (citing *Makinen*, 30 N.Y.3d at 89, 86 N.E.3d at 520), 802; *see Mihalik*, 715 F.3d at 109.

Accordingly, and for the reasons discussed *supra* Section II.C.1, the court concludes that plaintiff meets his burden at summary judgment with respect to his claim of race discrimination brought pursuant to the NYCHRL.

## 3.   Liability of the individual defendants under 42 U.S.C. § 1981, the NYSHRL and NYCHRL

Having concluded that plaintiff meets his burden at summary judgment with respect to his race discrimination claims brought against MTA Bus pursuant to Title VII, 42 U.S.C. § 1981, the NYSHRL and NYCHRL, the court proceeds to evaluate plaintiff's race discrimination claims brought pursuant to 42 U.S.C. § 1981, the NYSHRL and NYCHRL specifically against the individual defendants. *See supra* Section I.B.

The record includes evidence that would be sufficient for a reasonable juror to conclude that the individual defendants each "actually participated" or were

---

[4] As discussed *supra* Section II.A.2, the same standard at summary judgment applies with respect to the applicable federal (i.e., Title VII and 42 U.S.C. § 1981) and state (i.e., the NYSHRL) statutes.  *See Simmons*, 508 F. App'x at 12; *Ruiz,* 609 F.3d at 491; *Vivenzio*, 611 F.3d at 106.

"personally involved" in the conduct giving rise to plaintiff's claims, as the
individual defendants were plaintiff's supervisors and were involved in the allegedly
discriminatory counselings that resulted in plaintiff's "demotion" from his
probationary SLD status on two occasions.  *See* SMF ¶¶ 27, 47-55; RSMF ¶¶ 27, 47-
55; Thompson Decl., Exs. 25-29; Palencia Decl., Exs. K, R, V-W.

Consequently, the court denies defendants' motion for summary judgment as
to plaintiff's race discrimination claims brought against the individual defendants
pursuant to 42 U.S.C. § 1981, the NYSHRL and NYCHRL.

* * *

For the foregoing reasons, the court denies defendants' motion for summary
judgment as to plaintiff's race discrimination claims brought pursuant to: (1) Title
VII against MTA Bus; and (2) 42 U.S.C. § 1981, the NYSHRL and NYCHRL against
all defendants.

## III.   Retaliation

### A.   Legal framework

#### 1.   Applicable statutes

Plaintiff brings his retaliation claims pursuant to Title VII, 42 U.S.C. § 1981,
the NYSHRL and NYCHRL.  *See* Compl. at Sections III.A-III.B; *supra* Section I.B.

Title VII provides that "[i]t shall be an unlawful employment practice for an
employer to discriminate against any of his employees . . . because [an employee]
has opposed any . . . unlawful employment practice . . . [or] made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding, or hearing

under this subchapter."  42 U.S.C. § 2000e-3(a).

The Supreme Court has held that 42 U.S.C. § 1981 "prohibits not only racial

discrimination but also retaliation against those who oppose it."  *Univ. of Texas Sw.*

*Med. Ctr. v. Nassar*, 570 U.S. 338, 354-55 (2013) (citing *CBOCS W., Inc. v.*

*Humphries*, 553 U.S. 442, 445 (2008)); *see* 42 U.S.C. § 1981.

The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice

. . . to retaliate or discriminate against any person because he or she has opposed

any practices forbidden under this article or . . . has filed a complaint, testified or

assisted in any proceeding under this article."  N.Y. Exec. L. § 296(7).

The NYCHRL provides that "[i]t shall be an unlawful discriminatory practice

. . . to retaliate or discriminate in any manner against any person because such

person has . . . opposed any practice forbidden under this chapter . . . [or] filed a

complaint, testified or assisted in any proceeding under this chapter."  N.Y.C.

Admin. Code § 8-107(7).

## 2.    Retaliation pursuant to Title VII, 42 U.S.C. § 1981 and the NYSHRL

At the summary judgment stage, retaliation claims brought pursuant to Title

VII, 42 U.S.C. § 1981 and the NYSHRL are evaluated under the *McDonnell Douglas*

burden-shifting framework.  *See McDonnell Douglas*, 411 U.S. at 802-05; *Hicks v.*

*Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (citing *Patterson*, 375 F.3d at 225; *Reed v.*

*A.W. Lawrence & Co.*, 95 F.3d 1170, 1177 (2d Cir. 1996)).

The first step of the *McDonnell Douglas* framework requires that the plaintiff

establish a prima facie case of retaliation.  *See Littlejohn*, 795 F.3d at 315-16

(quoting *Hicks*, 593 F.3d at 164).  A prima facie case of retaliation requires that the

plaintiff produce evidence that would be sufficient to demonstrate that: (1) the

plaintiff participated in a protected activity; (2) the defendant had knowledge of the

protected activity; (3) the plaintiff suffered an adverse employment action; and (4)

there is a "causal connection" between the protected activity and the adverse

employment action.  *Id.*; *see Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d

Cir. 2013) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir.

2005)).

Should the plaintiff meet this initial burden, the second step of *McDonnell*

*Douglas* shifts the burden to the defendant "to demonstrate that a legitimate,

nondiscriminatory reason existed for its action." *Summa v. Hofstra Univ.*, 708 F.3d

115, 125 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Raniola v.*

*Bratton*, 243 F.3d 610, 625 (2d Cir. 2001)).

Should the defendant meet this burden, the third step of *McDonnell Douglas*

then shifts the burden back to the plaintiff to establish "that the employer's action

was, in fact, motivated by discriminatory retaliation."  *Id.*  At this third step, "the

presumption of retaliation arising from the establishment of the prima facie case

drops . . . and the plaintiff must establish that his or her protected activity was a

*but-for cause* of the alleged adverse action by the employer . . . ." *Lambert v. Trump*

*Int'l Hotel & Tower*, 304 F. Supp. 3d 405, 423 (S.D.N.Y. 2018) (emphasis supplied)

(internal quotation marks omitted) (citation omitted); *see Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 70 (2d Cir. 2015).  To demonstrate "but for" causation, the plaintiff is not required to establish that "retaliation was the only cause of the employer's action . . . only that the adverse action would not have occurred in the absence of the retaliatory motive."  *Zann Kwan*, 737 F.3d at 846.

### 3.    Retaliation pursuant to the NYCHRL

As with retaliation claims brought pursuant to Title VII, 42 U.S.C. § 1981 and the NYSHRL, retaliation claims brought pursuant to the NYCHRL are analyzed under the *McDonnell Douglas* framework.  *See Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 69-70 (S.D.N.Y. 2016) (citing *Leon v. Columbia Univ. Med. Ctr.*, No. 11-CV-08559 NSR, 2013 WL 6669415, at *12 (S.D.N.Y. Dec. 17, 2013), *aff'd*, 597 F. App'x 30 (2d Cir. 2015)).  "The NYCHRL imposes an identical standard" as the applicable federal and state statutes, "save for two important exceptions."  *Maynard v. Montefiore Med. Ctr.*, No. 18-CV-8877 (LAP), 2021 WL 396700, at *6 (S.D.N.Y. Feb. 4, 2021).  The first exception is that, with respect to the third element of a prima facie case of retaliation, the NYCHRL does not require that the plaintiff "prove any adverse employment action; instead, she must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity."  *Id.* (internal quotation marks omitted) (quoting *Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99, 129 (S.D.N.Y. 2020)). The second exception is that "the NYCHRL does not require a plaintiff to show but-for causation.  Instead, summary judgment is appropriate only if the plaintiff

cannot show that retaliation played any part in the employer's decision." *Id.*

(internal quotation marks omitted) (quoting *Dodd*, 489 F. Supp. 3d at 269); *see*

*Mihalik*, 715 F.3d at 116.

## B.   Positions of the parties

Defendants argue that plaintiff fails to establish a prima facie case of

retaliation. *See* Defs. Br. at 18-20; Defs. Reply Br. at 5-7. To start, defendants

contend that the internal complaint that plaintiff filed with SIS was not a

"protected activity." Defs Br. at 19; *see* Defs. Reply Br. at 5-7. Defendants maintain

that plaintiff's internal complaint concerned the "allege[d] inadequate training" that

plaintiff and other MTA Bus employees had received at the JFK Depot, but that

there is no indication in the record that this complaint and the ensuing SIS

"investigation [dealt] with race discrimination." Defs. Reply Br. at 5-6.

Defendants challenge also plaintiff's reference to defendant Miller's

deposition testimony to buttress the claim that plaintiff engaged in a "protected

activity." *Id.* at 6. According to defendants, Miller's testimony "does not constitute

that of a [FRCP] 30(b)(6) witness" and is not "probative of whether plaintiff engaged

in protected activity . . . ." *Id.*

Plaintiff argues that he establishes a prima facie case of retaliation. *See* Pl.

Br. at 19-22. To start, plaintiff contends that his internal complaint, when

"[p]roperly viewed alongside surrounding circumstances," constituted a "protected

activity." *Id.* at 21 (internal quotation marks omitted). Further, plaintiff argues

that defendants "understood, or could reasonably have understood," that plaintiff's

complaint concerned race discrimination and, consequently, that defendants had knowledge of plaintiff's "protected activity." *Id.* at 20-21 (internal quotation marks omitted) (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)). In addition, plaintiff contends that the counselings that he received as a probationary SLD were "adverse employment actions" and, further, that the "nature and degree of counseling [that plaintiff] received during his second probationary period evinces [sic] retaliatory animus." Pl. Br. at 20 n.12; *see* Oral Arg. Tr. at 8:08-9:07.

### C.    Analysis

The court addresses first plaintiff's retaliation claims brought pursuant to Title VII, 42 U.S.C. § 1981 and the NYSHRL, before turning to plaintiff's retaliation claim brought pursuant to the NYCHRL.

### 1.    Plaintiff's claims brought pursuant to Title VII, 42 U.S.C. § 1981 and the NYSHRL

#### a.    *McDonnell Douglas* step one

##### i.    Participation in a protected activity

Plaintiff produces evidence that would be sufficient to demonstrate that he participated in a "protected activity" in filing an internal complaint with the Office of Special Investigations and Security of MTA Bus. *Littlejohn*, 795 F.3d at 316 (quoting *Hicks*, 593 F.3d at 164).

The Second Circuit has stated that a "protected activity" is an "action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (citing 42 U.S.C. § 2000e-3; *Wimmer v. Suffolk*

*Cnty. Police Dep't*, 176 F.3d 125, 134-35 (2d Cir. 1999)); *see Risco v. McHugh*, 868 F.

Supp. 2d 75, 110 (S.D.N.Y. 2012) (stating that "informal protests of discriminatory

employment practices, including making complaints to management," may

constitute "protected activit[ies]" (internal quotation marks omitted) (quoting

*Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990))).  To demonstrate

participation in a protected activity, a plaintiff "need not establish that the conduct

she opposed was actually [prohibited] . . . only that she possessed a '*good faith,*

*reasonable belief* that the underlying employment practice was unlawful.'"  *Galdieri-*

*Ambrosini*, 136 F.3d at 292 (emphasis supplied) (internal quotation marks omitted)

(quoting *Reed*, 95 F.3d at 1178) (citing *Manoharan v. Columbia Univ. Coll. of*

*Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).  Further, evidence

demonstrating a plaintiff's opposition to an employment practice that

disproportionately affects minority employees may indicate the plaintiff's "good

faith, reasonable belief" that such opposition is directed toward unlawful

discrimination and, consequently, that such opposition constitutes a "protected

activity."  *Ellis v. Century 21 Dep't Stores*, 975 F. Supp. 2d 244, 280-81 (E.D.N.Y.

2013); *see Smith v. AFSCME Council 4*, No. 3:08-CV-1735 RNC, 2012 WL 3580285,

at *12 (D. Conn. Aug. 17, 2012); *Hagan v. City of New York*, 39 F. Supp. 3d 481,

501-02 (S.D.N.Y. 2014).  "The reasonableness of the plaintiff's belief is to be

assessed in light of the totality of the circumstances."  *Galdieri-Ambrosini*, 136 F.3d

at 292 (citing *Reed*, 95 F.3d at 1178).

Plaintiff demonstrates with sufficient evidence his "good faith, reasonable belief" that in filing an internal complaint subsequent to the termination of his first probationary period, *id.* at 287, plaintiff "protest[ed] or oppose[d] statutorily prohibited discrimination." *Cruz*, 202 F.3d at 566. Specifically, plaintiff produces evidence indicating that he filed his internal complaint to address the alleged inadequate training that he and several other probationary SLDs who are minorities had received at the JFK Depot. *See* Thompson Decl., Exs. 15-16; SMF ¶ 33; RSMF ¶ 33; *Adams v. Northstar Location Servs., LLC*, No. 09CV1063, 2010 WL 3911415, at *4 (W.D.N.Y. Oct. 5, 2010) (concluding that the plaintiff had established her participation in a "protected activity" with reference to evidence demonstrating the plaintiff's "advocacy for certain minority employees"); *Slaughter v. Cnty. of Allegheny*, No. 2:11-CV-880, 2013 WL 5491739, at *6 (W.D. Pa. Oct. 1, 2013) (concluding that the plaintiff demonstrated his participation in a "protected activity" with reference to "numerous internal complaints" that he had filed "regarding [the] alleged unequal application of County policies to black corrections officers," and notwithstanding that several officers for whom the plaintiff had advocated had filed separately their own complaints); *Hagan*, 39 F. Supp. 3d at 501-02.

Plaintiff points in this regard to the report that SIS issued subsequent to the filing of his internal complaint and the ensuing investigation of the adequacy of training at the JFK Depot. *See* Palencia Decl., Ex. O; SMF ¶ 33 ("SIS investigated the adequacy of the training [that plaintiff] and the other complainants had

received."); RSMF ¶ 33.  The SIS report indicates that plaintiff alleged in his internal complaint that he and two other probationary SLDs who are minorities — Lora Hinds and Rehan Munsif — "were improperly trained which resulted in their being demoted to Bus Operator[s]."  Palencia Decl., Ex. O; *see* RSMF ¶ 7 (referencing "MTA Bus employees Lora Hinds, a Black [woman] and Rehan Munsif, of Arab descent").  SIS recommended in this report that "Baker, Hinds, and Munsif . . . be given a second opportunity to become Dispatchers."  Palencia Decl., Ex. O.

Plaintiff points also to a letter, dated January 27, 2016, that plaintiff sent to Robert Picarelli of MTA Bus to inquire about the status of plaintiff's internal complaint.  *See* Thompson Decl., Ex. 16.  In this letter, plaintiff stated that he was "requesting a brief update on the status of [the] investigation into *our* cases," as "[i]t has been nearly a year since *we* were 'involuntarily' demoted" from the probationary SLD position.  *Id.* (emphasis supplied).  Plaintiff stated also that "*we* are anxiously awaiting a positive outcome which will result in *our* reinstatement as SLDs."  *Id.* (emphasis supplied).

Further, plaintiff produces testimonial evidence indicating that his internal complaint addressed the alleged inadequate and discriminatory training that he, Hinds and Munsif had received while serving as probationary SLDs.  *See* Palencia Decl., Ex. B at 122:14-23.  Plaintiff stated in his deposition that in filing his internal complaint, he intended to address unlawful discrimination in the form of the inadequate training that he, Hinds and Munsif had received at the JFK Depot.  *See id.*  In addition, defendant Duke acknowledged in her deposition that the SIS

investigation that resulted from plaintiff's internal complaint concerned the

training received by plaintiff, Hinds and Munsif, each of whom is a "[person] of

color."  Thompson Decl., Ex. 5 at 236:01-10; *see id.*, Ex. 3 at 138:07-18.

Evaluating the record in its "totality," *Galdieri-Ambrosini*, 136 F.3d at 292

(citing *Reed*, 95 F.3d at 1178), the court concludes that plaintiff meets his "minimal"

burden to demonstrate a "good faith, reasonable belief," *id.* at 287, that his internal

complaint "protest[ed] or oppose[d] statutorily prohibited discrimination" and,

consequently, that this complaint was a "protected activity."  *Cruz*, 202 F.3d at 566;

*see Hagan*, 39 F. Supp. 3d at 501-02.  The court reaches this conclusion

notwithstanding defendants' assertion that neither plaintiff's internal complaint

nor the SIS report "mention[ed]" explicitly race discrimination.  Defs. Reply Br. at 5-

6.  Contrary to this assertion, a plaintiff "need not . . . incant[] the precise words of

the statute" to demonstrate "engage[ment] in [a] protected activity."  *Colon v.

N.Y.C. Hous. Auth.*, No. 16-CV-4540 (VSB), 2021 WL 2159758, at *16 (S.D.N.Y. May

26, 2021) ("Simply put, no magic words are required." (internal quotation marks

omitted) (quoting *Malena*, 886 F. Supp. 2d at 363)).

Consequently, plaintiff meets his burden with respect to the first element of

his prima facie case of retaliation.

### ii.      Knowledge of the protected activity

Plaintiff produces evidence that would be sufficient to demonstrate that MTA

Bus had knowledge of plaintiff's "participation in a protected activity."  *Littlejohn*,

795 F.3d at 316 (quoting *Hicks*, 593 F.3d at 164); *see Galdieri-Ambrosini*, 136 F.3d

at 292 ("[I]mplicit in the requirement that the employer [be] aware of the protected

activity is the requirement that it understood, or could reasonably have understood,

that the plaintiff's opposition was directed at [unlawful] conduct.").

Plaintiff demonstrates with sufficient evidence the knowledge of MTA Bus

that plaintiff participated in a protected activity in filing an internal complaint with

SIS.  To start, the record demonstrates the "aware[ness]" of MTA Bus with respect

to plaintiff's internal complaint.  *Galdieri-Ambrosini*, 136 F.3d at 292.  "[T]o satisfy

the knowledge requirement, [nothing] more is necessary than general corporate

knowledge that the plaintiff has engaged in a protected activity."  *Gordon v. N.Y.C.*

*Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000); *see Papelino v. Albany Coll. of*

*Pharm. of Union Univ.*, 633 F.3d 81, 92 (2d Cir. 2011) ("[T]he 'knowledge'

requirement is met if the legal entity was on notice." (citing *Gordon*, 232 F.3d at

113-14)).  In the instant action, that plaintiff filed his internal complaint with SIS

— an office within MTA Bus that is "tasked with 'oversight to enforce the fair and

equitable treatment of all employees,'" RSMF ¶ 14; *see* Palencia Decl., Ex. C at

76:02-24 — is sufficient to demonstrate the "general corporate knowledge" of MTA

Bus with respect to plaintiff's complaint.  *Gordon*, 232 F.3d at 116; *see* Thompson

Decl., Exs. 15-16; *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 270

(S.D.N.Y. 2007) (concluding that the plaintiff's internal complaints "clearly

satisf[ied]" the "knowledge" element of a prima facie case of retaliation (citing

*Gordon*, 232 F.3d at 116; *Reed*, 95 F.3d at 1178; *Campbell v. Home Depot U.S.A.,*

*Inc.*, No. 03CV1421(KMK)(HBP), 2006 WL 839001, at *11 (S.D.N.Y. Mar. 30, 2006),

*aff'd sub nom. Campbell v. Home Depot USA, Inc.*, 221 F. App'x 21 (2d Cir. 2007))).

Moreover, the record demonstrates that MTA Bus "understood, or could

reasonably have understood," that plaintiff's internal complaint was directed

toward unlawful discrimination. *Galdieri-Ambrosini*, 136 F.3d at 292. Plaintiff

points specifically to defendant Miller's deposition, in which Miller responded "[y]es"

when asked whether he was involved in any investigations regarding "employment

discrimination" with respect to plaintiff's complaint. Thompson Decl., Ex. 3 at

31:05-10. "[R]esolv[ing] all ambiguities . . . and credit[ing] all factual inferences

that could rationally be drawn" with respect to Miller's testimony in plaintiff's

favor, the court concludes that this evidence satisfies plaintiff's minimal burden at

the summary judgment stage. *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001).

The court reaches this conclusion notwithstanding defendants' argument that

Miller "was not testifying as a [FRCP] 30(b)(6) witness." Oral Arg. Tr. at 20:16; *see*

Defs. Reply Br. at 6-7. Pursuant to FRCP 30(b)(6), "a party may name as the

deponent a public or private corporation, a partnership, an association, a

governmental agency, or other entity . . . [and] [t]he named organization must

designate one or more officers, directors, or managing agents, or designate other

persons who consent to testify on its behalf." Fed. R. Civ. P. 30(b)(6). While Miller

was not "designate[d]" to testify on behalf of MTA Bus pursuant to FRCP 30(b)(6),

as a fact witness, Miller was permitted to testify as to matters within his "personal

knowledge," including his involvement in an investigation regarding "employment

discrimination" with respect to plaintiff's complaint.  *Id.* (providing that FRCP

30(b)(6) "does not preclude a deposition by any other procedure allowed by these

rules"); *see Goldberger Co., LLC v. Uneeda Doll Co., Ltd.*, No. 16 CIV. 4630 (AJP),

2017 WL 3098110, at *8 & n.14 (S.D.N.Y. July 21, 2017).  On this basis, the

argument that Miller's testimony may not be used to demonstrate that MTA Bus

"understood, or could reasonably have understood," plaintiff's internal complaint to

concern unlawful discrimination lacks merit.  *Galdieri-Ambrosini*, 136 F.3d at 292;

*see Reed*, 95 F.3d at 1178 (stating that the employer "was aware that the plaintiff

was complaining about a co-worker's allegedly unlawful conduct," as, "by

complaining to an officer of the company . . . the plaintiff was in effect

communicating her concerns . . . to [the employer]").

Consequently, plaintiff meets his burden to demonstrate that MTA Bus had

knowledge of plaintiff's participation in a "protected activity."  *Littlejohn*, 795 F.3d

at 316 (quoting *Hicks*, 593 F.3d at 164).

### iii.    Adverse employment action

Plaintiff produces evidence that would be sufficient to demonstrate that he

suffered an "adverse employment action."  *Id.* (quoting *Hicks*, 593 F.3d at 164).

The Second Circuit has stated that a negative performance evaluation may

constitute an "adverse employment action" in the context of a retaliation claim in

circumstances in which such an evaluation results in a "materially adverse change

in the . . . conditions of [the plaintiff's] employment."  *Sanders*, 361 F.3d at 755

(internal quotation marks omitted) (quoting *Richardson*, 180 F.3d at 446); *see Hui-*

*Wen Chang v. N.Y.C. Dep't of Educ.*, 412 F. Supp. 3d 229, 250 (E.D.N.Y. 2019)

("[F]or the purposes of a retaliation claim, bad performance reviews are an adverse

employment action." (internal quotation marks omitted) (quoting *Siddiqi v. N.Y.C.

Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 372 (S.D.N.Y. 2008))).

     As discussed *supra* Section II.C.1.a.iii, plaintiff demonstrates that the

███████████████████████ subsequent to the filing of his internal complaint —

i.e., plaintiff's counselings during his second probationary period — were adverse

employment actions.  The record indicates that during his second probationary

period, ███████████████████████████████████████████████████

██████. *See* Thompson Decl., Exs. 25-29; SMF ¶¶ 17-19, 26; RSMF ¶¶ 17-19, 26;

Palencia Decl., Exs. Q-W.  Further, plaintiff demonstrates with sufficient evidence

that ████████████ resulted in a "materially adverse change" in the conditions of

his employment at MTA Bus — i.e., plaintiff's "demotion" from his second

probationary period.  *Sanders*, 361 F.3d at 755 (internal quotation marks omitted)

(quoting *Richardson*, 180 F.3d at 446); *see* SMF ¶ 55; RSMF ¶ 55; Thompson Decl.,

Exs. 27, 30.

     Consequently, plaintiff meets his burden with respect to the third element of

his prima facie case of retaliation.

### iv.    Causal connection

     Plaintiff produces evidence that would be sufficient to demonstrate a "causal

connection" between his protected activity and the alleged adverse employment

actions.  *Littlejohn*, 795 F.3d at 316 (quoting *Hicks*, 593 F.3d at 164).

The Second Circuit has stated that a plaintiff may establish a "causal connection" with reference to evidence "showing that the protected activity was closely followed in time by the adverse [employment] action." *Zann Kwan*, 737 F.3d at 845 (internal quotation marks omitted); *see Summa*, 708 F.3d at 128 ("This Court has recently held that even gaps of four months can support a finding of causation." (citing *Hubbard v. Total Commc'ns, Inc.*, 347 F. App'x 679, 681 (2d Cir. 2009) (summary order))); *Lambert*, 304 F. Supp. 3d at 423 ("[T]he passage of about two months between the protected activity and the adverse action appears to be the approximate dividing line."). Further, the Second Circuit previously has evaluated "temporal proximity" with reference to the "first moment in time" when an employer "could have retaliated" against a plaintiff. *Summa*, 708 F.3d at 128 ("The start of the spring season was the *first moment in time* when the football coaching staff could have retaliated against [the plaintiff]." (emphasis supplied)).

The record in the instant action indicates that plaintiff's first probationary period was terminated on March 20, 2015. Palencia Decl., Ex. L. On April 22, 2015, plaintiff filed his internal complaint with SIS. *Id.*, Ex. N. On June 17, 2016, SIS published its report following an approximately 14-month investigation of the adequacy of training at the JFK Depot. *Id.*, Ex. O. On August 8, 2016, and in accordance with the recommendation set forth in the SIS report, plaintiff was promoted to the probationary SLD position for a second time. *Id.*, Ex. Q. On October 18, 2016, plaintiff received his first counseling of his second probationary period. SMF ¶ 47; RSMF ¶ 47; Palencia Decl., Ex. Q.

The foregoing evidence indicates that there was a period of approximately two months between plaintiff's return to work as a probationary SLD and plaintiff's first counseling of his second probationary period.  *See* Thompson Decl., Ex. 25; Palencia Decl., Ex. Q.  "[R]esolv[ing] all ambiguities . . . and credit[ing] all factual inferences that could rationally be drawn" in plaintiff's favor, *Cifra*, 252 F.3d at 216, plaintiff's return to work and his first counseling occurred sufficiently close in time to demonstrate a "causal connection" between plaintiff's protected activity and the alleged adverse employment actions.  *Lambert*, 304 F. Supp. 3d at 423 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

On this basis, plaintiff meets his burden with respect to the fourth element of his prima facie case of retaliation and, consequently, meets his burden at the first step of *McDonnell Douglas*.

### b.  *McDonnell Douglas* step two

MTA Bus meets its burden at the second step of *McDonnell Douglas* to offer a "legitimate, nondiscriminatory reason . . . for its action[s]."  *Summa*, 708 F.3d at 125 (internal quotation marks omitted) (quoting *Raniola*, 243 F.3d at 625); *see Casalino v. N.Y. State Cath. Health Plan, Inc.*, No. 09 CIV. 2583 (LAP), 2012 WL 1079943, at *13 n.3 (S.D.N.Y. Mar. 30, 2012) (stating that at the second step of *McDonnell Douglas*, the defendant has a "relatively light" burden of production (citing *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998))).

MTA Bus produces evidence that would be sufficient to demonstrate that it had a legitimate, non-discriminatory rationale ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████ .

*See* SMF ¶¶ 47-55; RSMF ¶¶ 47-55; Thompson Decl., Exs. 25-29; Palencia Decl.,

Exs. Q-W (████████████████████████████████████████

████████████████ ).

On this basis, MTA Bus meets its burden at the summary judgment stage

with respect to plaintiff's retaliation claims brought against MTA Bus pursuant to

Title VII, 42 U.S.C. § 1981 and the NYSHRL.  *See Casalino*, 2012 WL 1079943, at

*13 n.3 (citing *Greenway*, 143 F.3d at 52).

### c.    *McDonnell Douglas* step three

Plaintiff does not meet his burden at the third step of *McDonnell Douglas* to

demonstrate that the actions of MTA Bus "[were], in fact, motivated by

discriminatory retaliation."  *Summa*, 708 F.3d at 125 (internal quotation marks

omitted) (quoting *Raniola*, 243 F.3d at 625).

As discussed *supra* Section III.A.2, at this third step the plaintiff must

"establish that his or her protected activity was a *but-for cause* of the alleged

adverse action . . . ."  *Lambert*, 304 F. Supp. 3d at 423 (emphasis supplied) (internal

quotation marks omitted) (quoting *Villar*, 135 F. Supp. 3d at 136).  Further, while

"temporal proximity . . . may give rise to an inference of retaliation for the purposes

of establishing a prima facie case . . . without more, such temporal proximity is

insufficient" at the third step of *McDonnell Douglas*.  *Monachino*, 481 F. App'x at 22

(internal quotation marks omitted) (quoting *El Sayed v. Hilton Hotels Corp.*, 627

F.3d 931, 933 (2d Cir. 2010)); *see Milano v. Astrue*, No. 05CIV.6527(KMW)(DCF),
2008 WL 4410131, at *27 (S.D.N.Y. Sept. 26, 2008), *aff'd*, 382 F. App'x 4 (2d Cir.
2010).

Plaintiff does not demonstrate that his participation in a "protected activity
was a but-for cause of the alleged adverse [employment] action[s]."  *Lambert*, 304 F.
Supp. 3d at 423 (internal quotation marks omitted).  Specifically, plaintiff fails to
produce evidence indicating that he would not have ███████████████ during his
second probationary period "but for" his decision to file an internal complaint with
SIS.  *See Aiken*, 2021 WL 6621579, at *26.  Plaintiff does not point to evidence
contesting ████████████████████████████████████████
█████████████ during his second probationary period.  *See Kanhoye v. Altana
Inc.*, 686 F. Supp. 2d 199, 209-10 (E.D.N.Y. 2009) (stating that the plaintiff did not
"offer even a denial of the facts underlying" the alleged adverse employment action
— a "lateness evaluation" — and, consequently, that the plaintiff failed to establish
his claim of retaliation).

Moreover, the "satisfactory" performance ratings that plaintiff received
during his second probationary period do not satisfy plaintiff's burden to
demonstrate "but for" causation.  *See* October 2016 Statement; December 2016
Statement; March 2017 Statement; *Mavrommatis v. Carey Limousine Westchester,
Inc.*, 476 F. App'x 462, 466 (2d Cir. 2011) (summary order) (concluding that the
plaintiff's evidence of "positive" feedback was not sufficient to meet his burden at
the third step of *McDonnell Douglas* in view of the employer's "evidence showing

that [the plaintiff] had numerous job performance issues"); *Missick v. City of New York*, 707 F. Supp. 2d 336, 350-52 (E.D.N.Y. 2010).  The record indicates that defendant Pome issued at three intervals during plaintiff's second probationary period a statement evaluating plaintiff's performance with respect to 53 categories that correspond to responsibilities of the SLD position.  *See* October 2016 Statement; December 2016 Statement; March 2017 Statement.  In each statement, Pome selected certain categories for which plaintiff received a "satisfactory" rating — i.e., 10 categories in the October 2016 Statement, 32 categories in the December 2016 Statement and 14 categories in the March 2017 Statement.  *Id.* ███████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████ ██ ████████████████████

████████████████████████████████████████████████████████

███████████████████████████████ ██ █████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████.  Accordingly, and evaluating in their totality the performance ratings that plaintiff received, the court concludes that plaintiff does

---

[5] As discussed *supra* Background at Section V, in the October 2016 Statement, defendant Pome selected also 17 categories as "N/A" to plaintiff and did not complete 15 categories.  *See* October 2016 Statement.  In the December 2016 Statement, Pome selected 11 categories as "N/A" to plaintiff and did not complete four categories.  *See* December 2016 Statement.  In the March 2017 Statement, Pome selected 23 categories as "N/A" to plaintiff and did not complete six categories. *See* March 2017 Statement.

not demonstrate with reference to such evidence that he would not have been counseled "but for" the filing of his internal complaint. *See Mavrommatis*, 476 F. App'x at 466; *Missick*, 707 F. Supp. 2d at 350-52.

Further, plaintiff does not demonstrate "but for" causation notwithstanding his assertion that "the nature and degree of counseling [that he] received during his second probationary period evinces [sic] retaliatory animus." Pl. Br. at 20 n.12; *see Kanhoye*, 686 F. Supp. 2d at 209-10. The testimonial evidence upon which plaintiff relies to substantiate this assertion is not sufficient to meet his burden to demonstrate "but for" causation. *See* Palencia Decl., Ex. B at 41:18-42:02 ("I have every reason to believe [that the counselings were] due to discrimination and retaliation and the hostile work environment [at the JFK Depot]."); *Maynard*, 2021 WL 396700, at *12; *Malacarne v. City Univ. of New York*, 289 F. App'x 446, 448 (2d Cir. 2008) (summary order) ("In light of the multiple, contemporaneously documented, and non-discriminatory reasons for [the plaintiff's] negative evaluation, [her] mere allegation that her complaint [resulted in the negative evaluation] . . . is unavailing." (internal quotation marks omitted)). That plaintiff disagrees with the "legitimate, non-discriminatory reasons" provided by MTA Bus for the counselings that he received is not sufficient, without more, to raise a genuine dispute of material fact as to this issue. *Saliga v. Chemtura Corp.*, No. 12-CV-832 (VAB), 2015 WL 5822589, at *20 (D. Conn. Oct. 1, 2015) (concluding that the plaintiff failed "to rebut or undermine [the employer's] legitimate, non-discriminatory reasons" for the plaintiff's "negative evaluations and termination" on

the basis that the plaintiff produced evidence "only . . . show[ing] her disagreement

with the standards to which she was . . . held" (citing *Gehringer v. St.*

*Joseph's/Candler Health Sys., Inc.*, No. 4:12-CV-77, 2013 WL 1180920, at *16 (S.D.

Ga. Mar. 20, 2013))).

Accordingly, plaintiff does not demonstrate that his participation in a

"protected activity" was a "but for" cause of the alleged adverse employment actions.

*Lambert*, 304 F. Supp. 3d at 423.  Consequently, plaintiff does not meet his burden

at the third step of *McDonnell Douglas* with respect to his retaliation claims

brought against MTA Bus pursuant to Title VII, 42 U.S.C. § 1981 and the NYSHRL.

### 2.   Plaintiff's claim brought pursuant to the NYCHRL

The court addresses next plaintiff's retaliation claim brought against MTA

Bus pursuant to the NYCHRL and concludes that plaintiff does not meet his burden

even under this statute.[6]  *See Mihalik*, 715 F.3d at 109.

As discussed *supra* Section III.A.3, "[t]he NYCHRL imposes an identical

standard" as the applicable federal and state statutes, "save for two important

exceptions." *Maynard*, 2021 WL 396700, at *6.  The first exception is that the

NYCHRL does not require that the plaintiff "prove any adverse employment action;

instead, she must prove that something happened that would be reasonably likely

to deter a person from engaging in protected activity." *Id.* (internal quotation

marks omitted) (quoting *Benzinger*, 447 F. Supp. 3d at 129).  Here, in view of the

---

[6] The NYCHRL states that "[t]he provisions of this title shall be construed liberally
for the accomplishment of the uniquely broad and remedial purposes thereof . . . ."
N.Y.C. Admin. Code § 8-130(a).

conclusion that plaintiff meets his burden under the applicable federal and state statutes to demonstrate that he suffered an adverse employment action, *see supra* Section III.C.1.a.iii, plaintiff also meets his burden under the NYCHRL to demonstrate that his counselings "would be reasonably likely to deter a person from engaging in protected activity." *Maynard*, 2021 WL 396700, at *6 (internal quotation marks omitted) (quoting *Benzinger*, 447 F. Supp. 3d at 129); *see Armstrong*, 2015 WL 992737, at *6 (stating that the "federal and state civil rights laws [are] a floor below which the [NYCHRL] cannot fall" (internal quotation marks omitted)).

The second exception is that "the NYCHRL does not require a plaintiff to show but-for causation.  Instead, summary judgment is appropriate only if the plaintiff cannot show that retaliation *played any part* in the employer's decision." *Maynard*, 2021 WL 396700, at *6 (emphasis supplied) (internal quotation marks omitted) (quoting *Dodd*, 489 F. Supp. 3d at 269).  The Court has stated that a plaintiff may establish that retaliation "played any part" with respect to an alleged adverse employment action with reference to evidence demonstrating that retaliation was a "partial motivating factor" for the employer's alleged action. *Heiden v. N.Y.C. Health & Hosps. Corp.*, No. 20-CV-10288 (LJL), 2023 WL 171888, at *22 (S.D.N.Y. Jan. 11, 2023) (citations omitted) (internal quotation marks omitted).  However, a plaintiff that "bring[s] a retaliation claim under the NYCHRL still must adduce admissible evidence" to support such a claim.  *Forrester v. Corizon Health, Inc.*, 752 F. App'x 64, 66 (2d Cir. 2018) (summary order) (citing *Mihalik*, 715

F.3d at 113, 116; *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 33-35 (2009)).

Further, evidence of "temporal proximity alone is not enough to demonstrate

retaliation under the NYCHRL," *Forrester*, 752 F. App'x at 66 (citing *Chen*, 805 F.3d

at 76-77), nor is speculation, *see Joseph v. Owens & Minor Distrib., Inc.*, 5 F. Supp.

3d 295, 322 (E.D.N.Y. 2014), *aff'd*, 594 F. App'x 29 (2d Cir. 2015).

The court concludes that plaintiff does not produce evidence that would be

sufficient to demonstrate that retaliation "played any part" with respect to the

counselings that plaintiff received during his second probationary period. *Mihalik*,

715 F.3d at 116; *see Maynard*, 2021 WL 396700, at *6 (quoting *Dodd*, 489 F. Supp.

3d at 269). As discussed, the evidence to which plaintiff points to buttress his claim

that retaliation was a "partial motivating factor" for his counselings — i.e.,

plaintiff's deposition testimony as to the alleged retaliatory animus of MTA Bus —

is not sufficient to satisfy plaintiff's burden under the NYCHRL. *Heiden*, 2023 WL

171888, at *22 (internal quotation marks omitted) (quoting *Bourara v. N.Y. Hotel

Trades Council & Hotel Ass'n of N.Y.C., Inc., Emp. Benefit Funds*, No. 20-3092, 2021

WL 4851384, at *1 (2d Cir. Oct. 19, 2021) (summary order)); *see Joseph*, 5 F. Supp.

3d at 322 ("In the absence of evidence beyond [the plaintiff's] speculation that [his

employer] w[as] motivated to terminate [the plaintiff] in response to [his]

complaints . . . [he] cannot establish retaliation under the less stringent standard of

the NYCHRL."). This conclusion is consistent with prior decisions of the Court.

*See, e.g.*, *Joseph*, 5 F. Supp. 3d at 322; *Aiken*, 2021 WL 6621579, at *26.

Consequently, plaintiff does not meet his burden with respect to his retaliation claim brought against MTA Bus pursuant to the NYCHRL.

* * *

For the foregoing reasons, the court concludes that plaintiff does not meet his burden at the summary judgment stage with respect to his retaliation claims brought against MTA Bus pursuant to Title VII, 42 U.S.C. § 1981, the NYSHRL and NYCHRL. Further, the court concludes that plaintiff does not meet his burden with respect to his retaliation claims brought specifically against the individual defendants pursuant to 42 U.S.C. § 1981, the NYSHRL and NYCHRL. *See supra* Section I.B; *Eur. v. Equinox Holdings, Inc.*, No. 20-CV-7787 (JGK), 2022 WL 4124763, at *10-11 (S.D.N.Y. Sept. 9, 2022) (concluding that "because the corporate defendants [were] not liable for the plaintiff's [retaliation] claims" brought pursuant to 42 U.S.C. § 1981, the NYSHRL and NYCHRL, "the individual defendants [could not] be liable for retaliation"), *reconsideration denied*, No. 20-CV-7787 (JGK), 2022 WL 16949864 (S.D.N.Y. Nov. 15, 2022); *see DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999).

Accordingly, the court grants defendants' motion for summary judgment as to plaintiff's retaliation claims brought pursuant to: (1) Title VII against MTA Bus; and (2) 42 U.S.C. § 1981, the NYSHRL and NYCHRL against all defendants.

## IV.    Failure to accommodate

### A.    Legal framework

#### 1.    Applicable statutes

Plaintiff brings his claims with respect to defendants' alleged failure to accommodate pursuant to the ADA, Rehabilitation Act, NYSHRL and NYCHRL. *See* Compl. at Sections III.A-III.B; *supra* Section I.B.

The ADA prohibits discrimination with respect to "the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA states that "the term 'discriminate against a qualified individual on the basis of disability'" includes the failure of an employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business." *Id.* § 12112(b)(5)(A).

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[7] 29 U.S.C. § 794(a).

---

[7] MTA Bus is a subsidiary of the Metropolitan Transportation Authority, *see* Palencia Decl. ¶ 2, which is a recipient of "federal financial assistance." *Forsee v. Metro. Transp. Auth.*, No. 19 CIV. 4406 (ER), 2020 WL 1547468, at *1 (S.D.N.Y. Mar. 31, 2020).

Regulations promulgated under the Rehabilitation Act by the U.S. Department of

Health and Human Services require that recipients of federal financial assistance

"make reasonable accommodation[s] to the known physical or mental limitations of

an otherwise qualified handicapped . . . employee unless the recipient can

demonstrate that the accommodation would impose an undue hardship on the

operation of its program or activity."  45 C.F.R. § 84.12(a); *see Lyons v. Legal Aid

Soc'y*, 68 F.3d 1512, 1515 (2d Cir. 1995).

The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice

. . . [f]or an employer . . . to refuse to provide reasonable accommodations to the

known disabilities . . . of an employee . . . in connection with a job or occupation

sought or held."  N.Y. Exec. L. § 296(3)(a).

The NYCHRL provides that "it is an unlawful discriminatory practice for any

person prohibited by the provisions of this section from discriminating on the basis

of disability not to provide a reasonable accommodation to enable a person with a

disability to satisfy the essential requisites of a job or enjoy the right or rights in

question provided that the disability is known or should have been known by the

covered entity."  N.Y.C. Admin. Code § 8-107(15)(a); *see Lazzari v. N.Y.C. Dep't of

Parks & Recreation*, 751 F. App'x 100, 102 (2d Cir. 2018) (summary order) (quoting

*Romanello v. Intesa Sanpaolo, S.p.A.*, 22 N.Y.3d 881, 885, 998 N.E.2d 1050, 1053

(2013)).

2.   **Failure to accommodate pursuant to the ADA, Rehabilitation Act and NYSHRL**

At the summary judgment stage, claims for failure to accommodate brought pursuant to the ADA, Rehabilitation Act and NYSHRL are evaluated under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas*, 411 U.S. at 802-05; *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716-17 (S.D.N.Y. 2020); *Lazzari*, 751 F. App'x at 102-03; *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019).

The first step of the *McDonnell Douglas* framework requires that the plaintiff establish a prima facie case of failure to accommodate. *Fox*, 918 F.3d at 71; *see Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015). A prima facie case requires that the plaintiff produce evidence that would be sufficient to demonstrate that: (1) she is a person with a disability; (2) the defendant had notice of the plaintiff's disability; (3) with "reasonable accommodation," the plaintiff would be able to perform the "essential functions" of the position; and (4) the defendant refused to provide such an accommodation. *Lazzari*, 751 F. App'x at 102 (quoting *Noll*, 787 F.3d at 94).

Should the plaintiff meet this initial burden, the second step of *McDonnell Douglas* shifts the burden to the defendant "to show that the accommodation would result in undue hardship." *Meucci v. City of Hartford*, No. 3:11CV766 JBA, 2013 WL 951722, at *5 (D. Conn. Mar. 12, 2013) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000)); *see Chang*, 412 F. Supp. 3d at 253 (quoting *Krachenfels v. N. Shore Long Island Jewish Health Sys.*, No. 13-CV-243 JFB WDW,

2014 WL 3867560, at *11 (E.D.N.Y. July 29, 2014)); *Parker*, 204 F.3d at 332

(indicating that the Second Circuit applies only the first and second steps of the

*McDonnell Douglas* burden-shifting framework with respect to claims for failure to

accommodate).

### 3.    Failure to accommodate pursuant to the NYCHRL

As with failure to accommodate claims brought pursuant to the ADA,

Rehabilitation Act and NYSHRL, claims brought pursuant to the NYCHRL are

analyzed under the *McDonnell Douglas* framework.  *See Williams v. MTA Bus Co.*,

44 F.4th 115, 136-37 (2d Cir. 2022); *Cadet v. All. Nursing Staffing of N.Y., Inc.*, No.

21 CIV. 3994 (KPF), 2022 WL 4584246, at *23 (S.D.N.Y. Sept. 29, 2022),

*reconsideration denied*, No. 21 CIV. 3994 (KPF), 2023 WL 3872574 (S.D.N.Y. Jan. 6,

2023), *reconsideration denied*, No. 21 CIV. 3994 (KPF), 2023 WL 3872558 (S.D.N.Y.

Apr. 12, 2023).  However, in contrast to the applicable federal and state statutes,

"the NYCHRL places the burden on the *employer* to demonstrate *lack* of a safe and

reasonable accommodation and to show undue hardship."  *Lazzari*, 751 F. App'x at

102 (emphasis supplied) (citing *Jacobsen v. N.Y.C. Health & Hosps. Corp.*, 22

N.Y.3d 824, 835, 11 N.E.3d 159, 167 (2014); N.Y.C. Admin. Code § 8-102(18)).

### B.    Positions of the parties

Defendants argue that "[p]laintiff fails to establish a prima facie case . . .

because [he] was not disabled nor perceived disabled by [d]efendants at any time

while working" at the JFK Depot.  Defs. Br. at 20-21; *see* Defs. Reply Br. at 7-9.

Defendants maintain that irrespective of ████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████. Defs. Br. at 20.

Defendants argue further that plaintiff "never made a reasonable accommodation request to anyone at MTA Bus" and, consequently, that defendants could not have refused to provide an accommodation that plaintiff did not request. Defs. Br. at 21; Defs. Reply Br. at 7-8. Defendants assert that plaintiff's argument that defendants "failed to engage in the interactive process" lacks merit, as "the record is clear that plaintiff had no intention of remaining at work after he was demoted in April 2017." Defs. Reply Br. at 8.

Plaintiff argues that he establishes a prima facie case of failure to accommodate. *See* Pl. Br. at 22-25. To start, plaintiff contends that he had a disability of which MTA Bus had notice. *See id.* at 22-23. Plaintiff argues further that he would have been able to perform the duties of the BO position with "reasonable accommodation." *See id.* at 24. Plaintiff points in this regard to certain "medical documentation that indicated [that he] could return to work" as a BO with reasonable accommodation. *Id.*

Plaintiff contends also that defendants refused to provide him with a reasonable accommodation. *See id.* Plaintiff maintains that his request for an accommodation did not "trigger[] the 'interactive process'" with defendants. *Id.* at 25.

### C.    Analysis

The court addresses first plaintiff's failure to accommodate claims brought against MTA Bus pursuant to the ADA, Rehabilitation Act and NYSHRL, before turning to plaintiff's failure to accommodate claim brought against MTA Bus pursuant to the NYCHRL.  The court then addresses plaintiff's failure to accommodate claims brought specifically against the individual defendants pursuant to the NYSHRL and NYCHRL.  *See supra* Section I.B (indicating that of the statutes that plaintiff selected to bring his failure to accommodate claims, the NYSHRL and NYCHRL provide for individual liability as a matter of law).

### 1.    Plaintiff's claims brought pursuant to the ADA, Rehabilitation Act and NYSHRL

#### a.    *McDonnell Douglas* step one

##### i.    Disability

Plaintiff produces evidence that would be sufficient to demonstrate that he had a "disability" while employed at MTA Bus.  *Noll*, 787 F.3d at 94.

The ADA provides that "[t]he term 'disability' means, with respect to an individual — (A) a physical or mental impairment that substantially limits one or more major activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[8]  42 U.S.C. § 12102(1)(A)-(C); *see*

---

[8] The Court evaluates "under the same standard" failure to accommodate claims brought pursuant to the ADA, Rehabilitation Act and NYSHRL.  *Piligian*, 490 F. Supp. 3d at 716-17; *see Lazzari*, 751 F. App'x at 102-03; *Noll*, 787 F.3d at 94.

*Santos v. City of New York*, No. 01 CIV. 0120 (SAS), 2001 WL 1568813, at *4
(S.D.N.Y. Dec. 7, 2001).

With respect to the first prong of the ADA's definition of disability, major
depressive disorder, panic disorders and related conditions may constitute "mental
impairment[s]" within the meaning of the statute. *See Monroe v. Cnty. of Orange*,
No. 14-CV-1957 (KMK), 2016 WL 5394745, at *8 (S.D.N.Y. Sept. 27, 2016);
*Zuckerman v. GW Acquisition LLC*, No. 20-CV-8742 (VEC), 2021 WL 4267815, at
*11 (S.D.N.Y. Sept. 20, 2021); *Bordeaux v. Halstead Prop. Dev. Mktg. LLC*, No. 20-
CV-1347 (LJL), 2022 WL 484992, at *9 (S.D.N.Y. Feb. 16, 2022).  Further, the ADA
provides that "major life activities include, but are not limited to, caring for oneself,
performing manual tasks, seeing, hearing, eating, sleeping, walking, standing,
sitting, reaching, lifting, bending, speaking, breathing, learning, reading,
concentrating, thinking, communicating, interacting with others, and working."  42
U.S.C. 12102(2)(A); *see* 29 C.F.R. § 1630.2(i)(1)(i); *McElwee v. Cnty. of Orange*, 700
F.3d 635, 643 (2d Cir. 2012).  In addition, the term "'substantially limits' [is]
construed broadly in favor of expansive coverage" and "is not meant to be a
demanding standard."  29 C.F.R. § 1630.2(j)(1)(i); *see Morris v. Town of Islip*, No.
12-CV-2984 JFB SIL, 2014 WL 4700227, at *9 (E.D.N.Y. Sept. 22, 2014).

With respect to the second prong of the ADA's definition of disability,
"[r]ecords that could potentially contain . . .  information [with respect to an
impairment] include education, medical or employment records."  *Covello v.*

*Depository Tr. Co.*, 212 F. Supp. 2d 109, 121 (E.D.N.Y. 2002) (citing 29 C.F.R. §

1630.2(k)); *see Monroe*, 2016 WL 5394745, at *10-11.

Last, the Court has stated that "[f]ailure-to-accommodate claims cannot be

asserted" under the third prong of the ADA's definition of disability. *Best v. Drugs*,

No. 14-CV-2648 (CM), 2017 WL 218251, at *3 n.6 (S.D.N.Y. Jan. 11, 2017), *aff'd sub*

*nom. Best v. Duane Reade, Inc.*, 715 F. App'x 95 (2d Cir. 2018); *see Graham v. Three*

*Vill. Cent. Sch. Dist.*, No. 11-CV-5182, 2013 WL 5445736, at *11 (E.D.N.Y. Sept. 30,

2013) ("[N]o failure to accommodate claim can be made, as a matter of law, for an

individual who was 'regarded as' disabled, rather than who was actually disabled."

(citing 42 U.S.C. § 12201(h))).

Accordingly, to establish the first element of a prima facie case of failure to

accommodate, a plaintiff is required to demonstrate that either: (1) the plaintiff has

"a physical or mental impairment that substantially limits one or more major

activities"; or (2) there is "a record of such an impairment."  42 U.S.C. § 12102(1)(A)-

(B).

Plaintiff demonstrates under each of the two foregoing prongs of the ADA's

definition of disability that he was disabled while employed at MTA Bus — i.e.,

prior to his administrative termination on April 14, 2018.  *See* SMF ¶¶ 58, 59;

RSMF ¶¶ 58, 59; Thompson Decl., Ex. 17.

Plaintiff demonstrates under the first prong of the ADA's definition of

disability that he had "a physical or mental impairment that substantially limit[ed]

one or more of [his] major life activities." 42 U.S.C. § 12102(1)(A).  Plaintiff points

to evidence ██████████████████████████ *Id.*; *see Bordeaux*, 2022

WL 484992, at *9 ("Major depressive disorder . . . is a diagnosable mental

impairment.").  In particular, the record includes: ████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████ .

      Further, the record indicates that █████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████  42 U.S.C. § 12102(1)(A), (2)(A); *see Zuckerman*, 2021 WL 4267815, at

*11 (stating that conditions such as "major depressive order . . . substantially limit

brain function" and "likely qualify as disabilities under the ADA because they will

'virtually always be found to impose a substantial limitation on a major life

activity'" (citations omitted)); *Morris*, 2014 WL 4700227, at *9 ("An impairment

'need not prevent, or significantly or severely restrict, the individual from

performing a major life activity in order to be considered substantially limiting.'"

(quoting *Kravtsov v. Town of Greenburgh*, No. 10-CV-3142 CS, 2012 WL 2719663, at

*10 (S.D.N.Y. July 9, 2012)) (citing *Brandon v. O'Mara*, No. 10 CIV. 5174 RJH, 2011

WL 4478492, at *7 (S.D.N.Y. Sept. 28, 2011))).  For instance, in plaintiff's April

2017 Medical Evaluation, ████████████████████████████████

████████████████████████████████████████████████████ April

2017 Medical Evaluation; *see Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 203-04 (2d

Cir. 2004).  In addition, ███████████████████████████████

██████████████████████████████████████████████ May 2017

Medical Evaluation; *see also* June 2017 Medical Evaluation (███████████

███████████████████████████████████████████████████).

Further, each of plaintiff's medical evaluations in the record — as well as the May

2017 Medical Leave Form and the October 2017 Medical Leave Form — ██████

██████████████████████████████████████████████████

███████████████████████████████████████████████████.

*See* April 2017 Medical Evaluation; May 2017 Medical Evaluation; June 2017

Medical Evaluation (███████████████████████████████████

███████████████████).  May 2017 Medical Leave Form; October 2017 Medical

Leave Form.  Plaintiff stated also in his deposition that due to ██████████

██████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████   Palencia Decl., Ex. B at 128:15-22; *see id.*,

Ex. Y.

       In view of the foregoing evidence, plaintiff demonstrates that he had a

"mental impairment that substantially limit[ed]" at least one of his "major life

activities."  42 U.S.C. § 12102(1)(A).

       Moreover, plaintiff demonstrates under the second prong of the ADA's

definition of disability that there is a "record of [his] impairment."  42 U.S.C. §

12102(1)(B).  In particular, the evidence discussed *supra* — i.e., (1) the medical

evaluations prepared by Dr. Esquenet and Dr. Majumdar; (2) the May 2017 Medical

Leave Form; and (3) the October 2017 Medical Leave Form — provides a "record" of

plaintiff's alleged "mental impairment."  *Id.*; *see* April 2017 Medical Evaluation;

May 2017 Medical Evaluation; June 2017 Medical Evaluation; May 2017 Medical

Leave Form; October 2017 Medical Leave Form; Palencia Decl., Ex. Y; *Covello*, 212

F. Supp. 2d at 121 ("Records that could potentially contain . . . information [with

respect to an impairment] include . . . medical or employment records." (citing 29

C.F.R. § 1630.2(k)));  *Monroe*, 2016 WL 5394745, at *10-11.

       In sum, plaintiff demonstrates with sufficient evidence that he had a

"disability" while employed at MTA Bus.  *Noll*, 787 F.3d at 94.  Consequently,

plaintiff meets his burden with respect to the first element of his prima facie case of

failure to accommodate.

### ii.    Notice of disability

Plaintiff produces evidence that would be sufficient to demonstrate that MTA

Bus had notice of his disability.  *Id.*; *see Edmonson v. Cnty. of Nassau*, No.

CV031025JSETB, 2005 WL 8161192, at \*5 (E.D.N.Y. Sept. 30, 2005) (concluding

that the plaintiff demonstrated that the defendants "knew, or were on notice of [the

plaintiff's] disability" with reference to a "letter from [the plaintiff's] physician

contained in his personnel file").  For instance, plaintiff points to the medical

evaluations prepared by Dr. Esquenet and Dr. Majumdar, each of whom is an MTA

physician.  *See* April 2017 Medical Evaluation; May 2017 Medical Evaluation; June

2017 Medical Evaluation.  Plaintiff points also to the May 2017 Medical Leave Form

and the October 2017 Medical Leave Form, each of which plaintiff completed and

submitted to MTA Bus ███████████████████████████████████.

*See* May 2017 Medical Leave Form; October 2017 Medical Leave Form; SMF ¶¶ 58,

59; RSMF ¶¶ 58, 59; Thompson Decl., Ex. 17.

Further, plaintiff produces letters prepared by Dr. Conciatori-Vaglica,

plaintiff's treating psychiatrist, and Dr. James, plaintiff's treating psychologist.  *See*

Thompson Decl., Exs. 18-19.  Dr. Conciatori-Vaglica stated in her letter, dated April

4, 2018, that ███████████████████████████████.

*Id.*, Ex. 18.  However, ████████████████████████

█████████████████████████████████████████

███████████████████████████   ███   ███████

█████████████████████████████████████████

 *Id.* (emphasis supplied).  Similarly, Dr. James stated in

his letter, dated April 6, 2018, that plaintiff ██████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████ *Id.*, Ex. 19.

Plaintiff produces also a letter that MTA Bus sent to plaintiff, dated April 17,

2018, in which Rekha Morris of MTA Bus informed plaintiff that ████████████

██████████████  ████████████████████  ████████████████████

████████████████████████████████████████████████████████████████

*Id.*, Ex. 17 (emphasis supplied).  In addition, the record includes plaintiff's

testimony as to an alleged phone call that occurred between plaintiff, his union

representative and Hope Duncan ("Duncan") of MTA Bus with respect to plaintiff's

request for an accommodation.  *See* Palencia Decl., Ex. B at 176:03-25.  Plaintiff

stated in his deposition that prior to the alleged phone call, he had sent to Duncan a

letter about his requested accommodation, but that when plaintiff and his union

representative called Duncan, Duncan allegedly "scream[ed]" that plaintiff "[was]

supposed to return to work at a hundred percent" and "hung up" the phone.  *Id.*

"[R]esolv[ing] all ambiguities and draw[ing] all permissible factual

inferences" in plaintiff's favor, *Wu v. Metro. Transp. Auth.*, No. 1:18-CV-6543-GHW,

2020 WL 615626, at *9 (S.D.N.Y. Feb. 7, 2020) (quoting *Johnson v. Killian*, 680 F.3d

234, 236 (2d Cir. 2012)), plaintiff demonstrates that MTA Bus had notice of his

disability.  Consequently, plaintiff meets his burden with respect to the second

element of his prima facie case of failure to accommodate.

### iii.    Reasonable accommodation

Plaintiff fails to produce evidence that would be sufficient to demonstrate that with "reasonable accommodation," he would have been able to perform the "essential functions" of the BO position.  *Noll*, 787 F.3d at 94.

The Court previously has stated that with respect to a reasonable accommodation request, "[w]hat matters . . . are not formalisms about the manner of the request, but whether the employee . . .  provides the employer with enough information that, *under the circumstances*, the employer can be fairly said to know of both the disability and desire for an accommodation."  *Quadir v. N.Y. State Dep't of Lab.*, 39 F. Supp. 3d 528, 540 (S.D.N.Y. 2014) (internal quotation marks omitted) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999)); *see Stevens v. Rite Aid Corp.*, 851 F.3d 224, 230 (2d Cir. 2017) ("A reasonable accommodation may include . . . reassignment to a vacant position." (quoting 42 U.S.C. § 12111(9))).  Further, the Second Circuit has stated that "[t]he plaintiff bears the initial 'burdens of both production and persuasion as to the existence of some accommodation' that would allow the plaintiff to perform the essential functions of the employment position, 'including the *existence of a vacant position* for which [the plaintiff] is qualified.'"  *Laguerre v. Nat'l Grid USA*, No. 20-3901-CV, 2022 WL 728819, at *2 (2d Cir. Mar. 11, 2022) (summary order) (emphasis supplied) (quoting *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)); *see Jackan v. N.Y. State Dep't of Lab.*, 205 F.3d 562, 564 (2d Cir. 2000) ("[A] plaintiff alleging a violation of the ADA . . . by virtue of an employer's failure to reasonably

accommodate the employee by reassigning him to a suitable vacant position bears the burden of proving that such a vacancy existed.").

Plaintiff does not demonstrate the "existence" of a "reasonable accommodation" — i.e., a "suitable vacant position" at another MTA Bus depot to which plaintiff may have been transferred.  *Jackan*, 205 F.3d at 564, 566-68; *see McBride*, 583 F.3d at 97-98 ("[Plaintiff] must demonstrate the existence, at or around the time when accommodation was sought, of an existing vacant position to which she could have been reassigned.").  Plaintiff does not produce evidence indicating that there was a "vacant" BO position at any other MTA Bus depot "at or around the time" that he allegedly requested an accommodation.  *McBride*, 583 F.3d at 97; *see Jackan*, 205 F.3d at 566-67 (stating that the burden to demonstrate "the 'existence' of an 'effective accommodation' is not satisfied by *mere speculation*" (emphasis supplied)).  Moreover, the record does not indicate that plaintiff was "aware of" or "looked into" the existence of a suitable vacancy at another MTA Bus depot.  *Pardo v. Nielsen*, No. 19-CV-616 (MKV), 2021 WL 1143897, at *10 (S.D.N.Y. Mar. 24, 2021), *judgment entered*, No. 19 CIVIL 616 (MKV), 2021 WL 1167879 (S.D.N.Y. Mar. 25, 2021); Palencia Decl., Ex. B at 178:06-179:03.  In addition, plaintiff does not produce evidence indicating that any such vacancy at another MTA Bus depot would have presented a "less stressful" environment.  *See Laguerre*, 2022 WL 728819, at *2 (affirming the district court's grant of summary judgment on the basis that the plaintiff had "identifie[d] no position . . . that was both 'less stressful' and vacant during the relevant period").

Rather, with respect to the third element of his prima facie case, plaintiff demonstrates only that he would have been able to perform the "essential functions" of the BO position. *Jackan*, 205 F.3d at 566-68. Plaintiff points in this regard to the letters prepared by Dr. Conciatori-Vaglica and Dr. James, which indicate that plaintiff was ███████████████████████████████████████████ ██████████████████████████████. Thompson Decl., Exs. 18-19; SMF ¶¶ 58, 59; RSMF ¶¶ 58, 59. In addition, plaintiff testified that he was capable of resuming his service as a BO ████████████████████████████████ ████████████████████████████████████████████ Palencia Decl., Ex. B at 174:12-18. The record indicates also that plaintiff served as a BO for 14 years prior to his first probationary period. *See* SMF ¶ 1; RSMF ¶ 1; *Shkolnik v. Philips Med. Sys. MR, Inc.*, No. 07-CV-0854 GLS-DRH, 2009 WL 2256951, at *2 (N.D.N.Y. July 28, 2009) (stating that the plaintiff "me[t] the qualification requirement because he possesse[d] the skill and experience required to perform the essential functions of his job . . . after having worked for [the defendant] for 15 years"). However, in view of plaintiff's failure to demonstrate the "existence" of a "reasonable accommodation," plaintiff does not meet his burden with respect to the third element of his prima facie case of failure to accommodate. *Jackan*, 205 F.3d at 566-68.

### iv.      Refusal to accommodate

The Second Circuit has stated with respect to the fourth element of a prima facie case of failure to accommodate that the ADA "envisions an 'interactive process'

by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Jackan*, 205 F.3d at 566 (citing *Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)).  Importantly, however, an employer's "refusal" to provide an accommodation — as evidenced by the "employer's failure to engage in a sufficient interactive process" — does "not allow a plaintiff to avoid summary judgment unless [the plaintiff] also establishes that, at least with the aid of *some identified accommodation*," the plaintiff would be able to perform the "essential functions" of the position.  *McBride*, 583 F.3d at 100-01 (emphasis supplied).

As discussed *supra* Section IV.C.1.a.iii, plaintiff does not "identif[y]" an accommodation — i.e., an existing vacancy at another MTA Bus depot — through which he would have been able to perform the "essential functions" of the BO position.  *Id.*  In addition, the record does not indicate that plaintiff "looked into" the existence of a vacancy at another MTA Bus depot that would be "suitable" with respect to plaintiff's alleged disability.  *Pardo*, 2021 WL 1143897, at *10; *see Laguerre*, 2022 WL 728819 at *2 ("Mere speculation that . . . a [suitable] position existed, or that [the employer] could have created such a position, is insufficient.");  Palencia Decl., Ex. B at 178:06-179:03.  Accordingly, the evidence to which plaintiff points in support of his showing with respect to the alleged refusal of MTA Bus to provide a reasonable accommodation — i.e., plaintiff's testimony as to the alleged phone call with Hope Duncan as well as ███████████████████████ —

does not "allow . . . plaintiff to avoid summary judgment." *McBride*, 583 F.3d at

100-01; *see* Palencia Decl., Ex. B at 176:03-25; Thompson Decl., Ex. 17.

* * *

For the foregoing reasons, plaintiff does not establish a prima facie case of

failure to accommodate and, consequently, does not meet his burden at summary

judgment with respect to his failure to accommodate claims brought against MTA

Bus pursuant to the ADA, Rehabilitation Act and NYSHRL.

### 2.    Plaintiff's claim brought pursuant to the NYCHRL

The court addresses next plaintiff's failure to accommodate claim brought

against MTA Bus pursuant to the NYCHRL and concludes that plaintiff meets his

burden under this statute.

As discussed *supra* Section IV.A.3, failure to accommodate claims brought

pursuant to the NYCHRL are analyzed under the *McDonnell Douglas* framework.

However, the elements of a prima facie case under the NYCHRL differ in two

respects from the elements of the applicable federal and state statutes.  *See*

*Goldman v. Sol Goldman Invs. LLC*, No. 20CV06727MKVSN, 2022 WL 6564021, at

\*8 (S.D.N.Y. Aug. 5, 2022), *report and recommendation adopted*, No. 1:20-CV-06727-

MKV-SN, 2022 WL 4482296 (S.D.N.Y. Sept. 27, 2022).  First, with respect to the

third element — i.e., that "with reasonable accommodation, [the] plaintiff could

perform the essential functions" of the position — "the NYCHRL presumes all

accommodations to be reasonable until proven otherwise."  *LeBlanc v. United Parcel*

*Serv.*, No. 11 CIV. 6983 KPF, 2014 WL 1407706, at \*17-18 (S.D.N.Y. Apr. 11, 2014)

(quoting *McMillan v. City of New York*, 711 F.3d 120, 125-26 (2d Cir. 2013)).  As

such, the NYCHRL "places the burden on the employer" and *not* the plaintiff to

demonstrate that an accommodation requested by the plaintiff would not be

reasonable.  *Lazzari*, 751 F. App'x at 102 (citing *Jacobsen*, 22 N.Y.3d at 835, 11

N.E.3d at 167; N.Y.C. Admin. Code § 8-102(18)).  Second, with respect to the fourth

element — i.e., that the defendant refused to make an accommodation — the

NYCHRL provides that "once an employee requests an accommodation . . . it

becomes the employer's duty, not the employee's, to engage in an 'interactive

process' aimed at reaching a reasonable accommodation."  *LeBlanc*, 2014 WL

1407706, at *18.

Should the plaintiff establish a prima facie case of failure to accommodate,

the burden then shifts to the defendant to "demonstrate lack of a safe and

reasonable accommodation and to show undue hardship."  *Lazzari*, 751 F. App'x at

102 (citing *Jacobsen*, 22 N.Y.3d at 835, 11 N.E.3d at 167; N.Y.C. Admin. Code § 8-

102(18)).

### a.    *McDonnell Douglas* step one

Plaintiff meets his burden under the NYCHRL to establish a prima facie case

of failure to accommodate.

For the reasons discussed *supra* Sections IV.C.1.a.i-ii, plaintiff produces

evidence that would be sufficient under the NYCHRL to demonstrate that: (1)

plaintiff had "disability" while employed at MTA Bus; and (2) MTA Bus had notice

of plaintiff's disability.  *See Goldman*, 2022 WL 6564021, at *8; *Armstrong*, 2015 WL

992737, at *6 (stating that the "federal and state civil rights laws [are] a floor below which the [NYCHRL] cannot fall" (internal quotation marks omitted)).

With respect to the third element of a prima facie case of failure to accommodate, plaintiff produces evidence that would be sufficient under the NYCHRL to demonstrate that with "reasonable accommodation," plaintiff would have been able to "perform the essential functions" of the BO position.  *See* *Goldman*, 2022 WL 6564021, at *8.  As discussed *supra* Sections IV.C.1.a.iii, the evidence to which plaintiff points to make this demonstration includes: (1) the letters prepared by Dr. Conciatori-Vaglica and Dr. James, which indicate that plaintiff was ██████████████████████████████████████████ ████████████████████████████████████████████████████████, Thompson Decl., Exs. 18-19; SMF ¶¶ 58, 59; RSMF ¶¶ 58, 59; (2) plaintiff's testimony that he was capable of resuming his service as a BO ████████████ ██████████████████████████████████████████████████████ █████████████ Palencia Decl., Ex. B at 174:12-18; and (3) evidence indicating that plaintiff served as a BO for 14 years prior to his first probationary period, *see* SMF ¶ 1; RSMF ¶ 1; *Shkolnik*, 2009 WL 2256951, at *2.

Further, plaintiff demonstrates that he requested an accommodation from MTA Bus with reference to the letters prepared by Dr. Conciatori-Vaglica and Dr. James, *see* Thompson Decl., Exs. 18-19, as well as plaintiff's testimony that he allegedly had sent to Hope Duncan a letter about his requested accommodation.  *See* Palencia Decl., Ex. B at 176:03-25.  As discussed, the NYCHRL does not require

that plaintiff demonstrate that his requested accommodation was reasonable. *See*

*LeBlanc*, 2014 WL 1407706, at *18 ("[T]he NYCHRL presumes all accommodations

[requested by a plaintiff] to be reasonable until proven otherwise.").  Moreover,

plaintiff meets his burden under the NYCHRL notwithstanding the absence of

evidence demonstrating the "existence of a vacant position" at another MTA Bus

depot.  *McBride*, 583 F.3d at 97 (citing *Jackan*, 205 F.3d at 566-67; *Shannon v.*

*N.Y.C. Transit Auth.*, 332 F.3d 95, 104 (2d Cir. 2003)); *see LeBlanc*, 2014 WL

1407706, at *19 ("Plaintiff bears no . . .  initial burden under the NYCHRL" to

demonstrate "that a vacant position existed.").

    Consequently, plaintiff meets his burden under the NYCHRL with respect to

the third element of his prima facie case of failure to accommodate.

    With respect to the fourth element of a prima facie case of failure to

accommodate, plaintiff meets his burden under the NYCHRL in view of the

apparent failure of MTA Bus to "engage in an 'interactive process'" with plaintiff

regarding his requested accommodation.  *LeBlanc*, 2014 WL 1407706, at *18

(stating that under the NYCHRL, "once an employee requests an accommodation . .

. it becomes the employer's duty, *not the employee's*, to engage in an 'interactive

process' aimed at reaching a reasonable accommodation." (emphasis supplied)).  As

discussed, plaintiff demonstrates that he "request[ed] an accommodation" with

reference to the letters prepared by Dr. Conciatori-Vaglica and Dr. James,

Thompson Decl., Exs. 18-19, as well as plaintiff's testimony as to his alleged

outreach to Duncan.  *See* Palencia Decl., Ex. B at 176:03-25; *LeBlanc*, 2014 WL

1407706, at *18.  Further, the record does not demonstrate that upon receiving plaintiff's request, MTA Bus complied with its "duty . . . to engage in an 'interactive process'" with respect to the provision of a potential accommodation to plaintiff. *LeBlanc*, 2014 WL 1407706, at *18; *see Beck*, 75 F.3d at 1135 (stating that "[a] party that fails to communicate, by way of initiation or response, may . . . be acting in bad faith" and, consequently, may be "responsib[le] for. . . a breakdown in the [interactive] process"); Palencia Decl., Ex. B at 176:03-25.

The evidence to which plaintiff points satisfies his burden under the NYCHRL notwithstanding defendants' argument that "plaintiff knew well . . . the process for requesting a reasonable accommodation," but failed to initiate this process in accordance with MTA Bus policy.  Defs. Reply Br. at 8; *see* Palencia Decl., Ex. C at 47:07-15; *LeBlanc*, 2014 WL 1407706, at *18 (denying summary judgment on the plaintiff's NYCHRL claim notwithstanding the defendant's contention that the plaintiff had failed to "follow [the defendant's] procedures for requesting an accommodation"); *Quadir*, 39 F. Supp. 3d at 540 ("[W]hat matters . . . are not formalisms about the manner of the request, but whether the employee . . . provides the employer with enough information that, *under the circumstances*, the employer can be fairly said to know of both the disability and desire for an accommodation." (internal quotation marks omitted)); *Diaz v. Viagran*, No. 16-CV-9106 (CM), 2018 WL 4360790, at *15 (S.D.N.Y. Aug. 29, 2018).

Moreover, the foregoing evidence satisfies plaintiff's burden notwithstanding defendants' reference to a declaration prepared by Duncan, in which Duncan

indicated that she "never worked in the MTA Bus Human Resources department"
and that she "[did] not recall ever being consulted . . . regarding a reasonable
accommodation request" by plaintiff.  Defs. Reply Br. at Attach. 1 (Jan. 4, 2021),
Decl. of Hope Duncan.  Duncan's declaration does not demonstrate that MTA Bus
met its "duty" under the NYCHRL to engage in the "interactive process" and to
"move forward to consider [an] accommodation" for plaintiff once he allegedly made
his request.  *LeBlanc*, 2014 WL 1407706, at *18-19 (quoting N.Y. Comp. Codes R. &
Regs. tit. 9, § 466.11(j)(4)) ("Defendant's apparent failure to engage in an interactive
process leaves a hole in this record concerning whether such process could have
yielded a substantive, reasonable accommodation for [the plaintiff's] disability.");
*see* N.Y.C. Admin. Code § 8-102, 8-107(28)(a).

In sum, plaintiff meets his burden under the NYCHRL with respect to the
fourth element of his prima facie case of failure to accommodate.  Consequently,
plaintiff establishes a prima facie case of failure to accommodate under the
NYCHRL.

### b.   *McDonnell Douglas* step two

MTA Bus does not meet its burden under the NYCHRL to demonstrate a
"lack of a safe and reasonable accommodation and to show undue hardship."
*Lazzari*, 751 F. App'x at 102 (citing *Jacobsen*, 22 N.Y.3d at 835, 11 N.E.3d at 167;
N.Y.C. Admin. Code § 8-102(18)).

The evidence to which MTA Bus points consists of the deposition of Benjamin
Serrano ("Serrano") of MTA Bus, in which Serrano provided testimony as to the

procedures of MTA Bus with respect to "bus operator transfers" and "supervisor transfer requests."  Palencia Decl., Ex. C at 83:10-20, 84:13-85:02.  With respect to "bus operator transfers," Serrano stated that "[t]here are different transfer processes depending on the agency [that an MTA Bus employee] work[s] for and . . . [the employee's] contractual bargaining unit."  *Id.* at 83:17-20.  With respect to "supervisor transfer requests," Serrano stated that "supervisors" may request a transfer to another MTA Bus depot "based on their contractual agreements" or "on another basis" — e.g., a "hardship transfer" — and that the decision to approve a transfer request is subject to "management's discretion."  *Id.* at 84:13-86:07.  In addition, Serrano indicated with respect to a "hardship transfer" that such a request is evaluated on a "case by case" basis between the employee's "union" and MTA Bus management.  *Id.* at 85:24-86:07.

Further — and without indicating whether this testimony applied to "supervisors" or to MTA Bus employees who do not hold supervisory positions — Serrano stated that an MTA Bus employee at the JFK Depot would be able to transfer only to the Far Rockaway Depot, an "annex" that maintains an "exclusive" relationship with the JFK Depot.  *Id.* at 86:17-87:22.  Serrano testified also that the "first step" for an employee requesting an "accommodation for a disability" would be to "fill out a reasonable accommodation request," which would be "submitted to the [employee's] depot . . . forwarded to the appropriate liaison and then . . . reviewed and approved by the reasonable accommodation officer."  *Id.* at 90:18-24.

The foregoing evidence does not satisfy the burden of MTA Bus to demonstrate the unavailability of "a safe and reasonable accommodation" for plaintiff. *Lazzari*, 751 F. App'x at 102 (citing *Jacobsen*, 22 N.Y.3d at 835, 11 N.E.3d at 167; N.Y.C. Admin. Code § 8-102(18)). Serrano's testimony as to "bus operator transfers" — i.e., that MTA Bus has "different transfer processes" through which a BO may request a transfer — does not indicate that plaintiff's requested accommodation would have presented any safety concerns or would have been unreasonable to effectuate. Palencia Decl., Ex. C at 83:17-20. Further, the record does not indicate that Serrano's testimony as to "supervisor transfer requests" — e.g., the process for "hardship transfer[s]" — as well as Serrano's testimony as to the "exclusive" relationship between the JFK Depot and the Far Rockaway Depot and the procedure to request an "accommodation for a disability" would even be applicable to plaintiff, who allegedly requested a transfer for his non-supervisory position as a BO. *Id.* at 84:13-90:24, 91:08-21; *see* RSMF ¶ 3. To the extent that the parties dispute the applicability of Serrano's testimony to plaintiff and his requested accommodation, this dispute raises a question of material fact that is appropriate to resolve at trial and not on summary judgment. *See LeBlanc*, 2014 WL 1407706, at *17-18.

Further, MTA Bus does not demonstrate that "undue hardship" would have resulted from plaintiff's requested accommodation. *Lazzari*, 751 F. App'x at 102 (citing *Jacobsen*, 22 N.Y.3d at 835, 11 N.E.3d at 167; N.Y.C. Admin. Code § 8-102(18)). The NYCHRL provides that an "[u]ndue hardship . . . shall mean an

accommodation requiring significant expense or difficulty."  N.Y.C. Admin. Code §

8-107(3)(b); *see Vangas v. Montefiore Med. Ctr.*, 6 F. Supp. 3d 400, 417-18 (S.D.N.Y.

2014).  MTA Bus fails to produce evidence with respect to any "expense" associated

with plaintiff's requested transfer to another MTA Bus depot.  N.Y.C. Admin. Code

§ 8-107(3)(b).  Moreover, MTA Bus does not produce evidence indicating that any

such expense would have been "significant."  *Id.*  Similarly, MTA Bus does not

demonstrate that plaintiff's requested transfer would have presented significant

"difficulty" for MTA Bus.  *Id.*  As discussed, Serrano's testimony indicates that MTA

Bus has "different transfer processes" in place through which a BO may request a

transfer to another depot.  Palencia Decl., Ex. C at 83:17-20.

Consequently, MTA Bus does not meet its burden under the NYCHRL to

demonstrate a "lack of a safe and reasonable accommodation and to show undue

hardship."  *Lazzari*, 751 F. App'x at 102 (citing *Jacobsen*, 22 N.Y.3d at 835, 11

N.E.3d at 167; N.Y.C. Admin. Code § 8-102(18)).

### 3.    Liability of the individual defendants under the NYSHRL and NYCHRL

Having concluded that MTA Bus does not meet its burden at summary

judgment with respect to plaintiff's failure to accommodate claim brought pursuant

to the NYCHRL, the court proceeds to evaluate plaintiff's failure to accommodate

claims brought specifically against the individual defendants pursuant to the

NYSHRL and NYCHRL.  *See supra* Section I.B.

At oral argument, plaintiff conceded that he brings his failure to

accommodate claim against "MTA Bus in [its] institutional capacity, not the

individual defendants." Oral Arg. Tr. 32:23-33:02. Based on plaintiff's representations at oral argument and the record in the instant action, the court grants to the individual defendants summary judgment as to plaintiff's failure to accommodate claims brought specifically against the individual defendants pursuant to the NYSHRL and NYCHRL.

* * *

For the foregoing reasons, the court grants in part and denies in part defendants' motion for summary judgment with respect to plaintiff's claims for failure to accommodate. Specifically, the court grants defendants' motion for summary judgment as to plaintiff's failure to accommodate claims brought against: (1) MTA Bus pursuant to the ADA and Rehabilitation Act; (2) all defendants pursuant to the NYSHRL; and (3) the individual defendants pursuant to the NYCHRL. Further, the court denies defendants' motion for summary judgment as to plaintiff's failure to accommodate claim brought against MTA Bus pursuant to the NYCHRL.

## V.   Hostile work environment

### A.   Legal framework

The Second Circuit previously has stated that "[w]here . . . a counseled non-moving party submits 'a partial response arguing that summary judgment should be denied as to some claims while not mentioning others,' that response 'may be deemed an abandonment of the unmentioned claims.'" *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) (summary order) (quoting *Jackson v. Fed. Exp.*, 766 F.3d

189, 195 (2d Cir. 2014)); *see Jackson*, 766 F.3d at 198 ("In all cases in which

summary judgment is granted, the district court must provide an explanation

sufficient to allow appellate review . . . includ[ing] a finding of abandonment of

undefended claims or defenses.").

### B.    Positions of the parties

Defendants contend that plaintiff fails to "adduce any evidence that he was

subjected to a hostile work environment."  Defs. Br. at 17.  Plaintiff does not

maintain in his briefing any hostile work environment claim.  *See generally* Pl. Br.;

*see also* Defs. Reply Br. at 2 n.2 ("Because plaintiff failed to set forth arguments as

to his hostile workplace claim in his opposition papers, he has waived them, and

that claim should be dismissed.").  Further, at oral argument plaintiff stated that he

would "concede the hostile work environment claim," as he "did not address [this

claim] in [his] briefing."  Oral Arg. Tr. at 33:07-10.

### C.    Analysis

Based on the circumstances presented in the instant action and plaintiff's

representations at oral argument, the court concludes that plaintiff has abandoned

his hostile work environment claims.  *See Kovaco v. Rockbestos–Surprenant Cable*

*Corp.*, 834 F.3d 128, 143-44 (2d Cir. 2016) ("[Plaintiff] abandoned [his hostile work

environment claims] in the District Court by failing to argue that they should

survive [the defendant's] motion for summary judgment.").  Accordingly, the court

grants defendants' motion for summary judgment as to plaintiff's hostile work

environment claims brought against: (1) MTA Bus pursuant to Title VII; and (2) all defendants pursuant to 42 U.S.C. § 1981, the NYSHRL and NYCHRL.

## CONCLUSION

For the reasons discussed, the court GRANTS in part and DENIES in part defendants' motion for summary judgment.

Specifically, the court GRANTS defendants' motion for summary judgment as to: (1) plaintiff's retaliation claims brought against MTA Bus pursuant to Title VII, and brought against all defendants pursuant to 42 U.S.C. § 1981, the NYSHRL and NYCHRL; (2) plaintiff's failure to accommodate claims brought against MTA Bus pursuant to the ADA and Rehabilitation Act, brought against all defendants pursuant to the NYSHRL, and brought against the individual defendants pursuant to the NYCHRL; and (3) plaintiff's hostile work environment claims brought against MTA Bus pursuant to Title VII, and brought against all defendants pursuant to 42 U.S.C. § 1981, the NYSHRL and NYCHRL.

Further, the court DENIES defendants' motion for summary judgment as to: (1) plaintiff's race discrimination claims brought against MTA Bus pursuant to Title VII, and brought against all defendants pursuant to 42 U.S.C. § 1981, the NYSHRL and NYCHRL; and (2) plaintiff's failure to accommodate claim brought against MTA Bus pursuant to the NYCHRL.

The Clerk of the Court is respectfully directed to restrict the viewing level of this Opinion & Order to the case participants and the court. On or before Tuesday, July 25, 2023, the parties are ordered to show cause, if there be any, that any

portion of this Opinion & Order should remain under seal.  *See In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 JMF, 2015 WL 2130904, at *2 (S.D.N.Y. May 6, 2015); *see also Valelly v. Lynch*, No. 19-CV-7998 (VEC), 2023 WL 2918982, at *10 (S.D.N.Y. Apr. 12, 2023).  To the extent that a party maintains that any portion of this Opinion & Order should remain under seal, that party is directed to file as an attachment to its response to the court's order a version of this Opinion & Order that includes any proposed redactions.

Further, the Clerk of the Court is respectfully directed to terminate the open motion at ECF No. 70.  In accordance with Rule 6 of the court's Individual Rules & Practices in Civil Cases, the parties shall submit a joint pretrial order and other required pretrial filings within 30 days of the entry of this Opinion & Order. SO ORDERED.

/s/ Timothy M. Reif
_____

Dated: July 18, 2023                 Timothy M. Reif, Judge
New York, New York                   United States Court of International Trade
                                     *Sitting by Designation*
                                     United States District Court for the
                                     Southern District of New York